A legacy to the "issue" of decedent's brothers and sisters goes to the descendants of such brothers and sisters of every degree where a different intention is not shown by the context, and the distribution is per capita, and not per stirpes.

[Ed. Note.—For other cases. see Wills, Cent. Dig. §§ 1087–1089, 1143, 1144. 1148–1152; Dec. Dig. §§ 498, 531.*

For other definitions, see Words and Phrases, vol. 4, pp. 3778–3782; vol. 8, p. 7693.]

Judicial settlement of the account of Charles F. Bauerdorf, as surviving executor of the last will and testament of Kilian Heintz. Decree denied.

See, also, 138 N. Y. Supp. 682.

Hugo H. Ritterbusch, of New York City, for executor.

Richard M. Bruno, of New York City, for Elizabeth Barth.

Leon Lewin, of New York City, for Johannes Heintz.

Jacob E. Salomon, of New York City, special guardian.

FOWLER, S.　The questions to be decided come before the surrogate on the settlement of the final decree in this matter, and their decision will control the final disposition by the executor of the fund in his hands now awaiting distribution pursuant to the will of Kilian Heintz. The facts before the surrogate are agreed on by all the parties concerned, and the matter is thus practically before the surrogate on an agreed case, as the following written submission discloses, viz.:

This proceeding is an accounting by Charles F. Bauerdorf as sole surviving executor of the last will and testament of Kilian Heintz, deceased.

Kilian Heintz died on May 7, 1892, in the borough of Manhattan, city of New York, leaving him surviving his wife, Maria Heintz, and no children or descendants. He left a will dated October 19, 1888, and a codicil dated July 23, 1890, both of which were duly probated by the Surrogate's Court, New York county, on the 16th day of September, 1892, and copies of which are annexed to the account, and letters were issued to said Charles F. Bauerdorf as executor and Maria Heintz, the widow, as executrix. The codicil provides for the payment of $300 to the Lutheran cemetery, the income to be applied toward maintaining the burial plot of the deceased in the cemetery, but in no other way modifies the will. It contains a clause whereby the provisions of the will are in all other respects ratified and confirmed. The cemetery authorities refused to accept the sum of $300 provided for them in the codicil. The will gives a life estate to the said widow·of deceased, Maria Heintz, in all his property, real and personal, and provides in paragraph "third" as follows:

"Third. Upon the death of my said wife I direct my executor hereinafter named to sell my real estate at public or private sale upon such terms and at such times as in his discretion shall be proper, giving and granting unto

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
138 N.Y.S.—43

said executor full power and authority to execute and deliver all proper deeds to convey the fee thereof to the purchaser or purchasers, and after the payment of any and all incumbrances and expenses incidental upon such sale to divide the net proceeds of the said real estate and the remaining personal property equally among my brother and three sisters, to wit, Johannes Heintz, of Sorga, Hersfeld, Kur Hessen, Germany; Barbara Luckhart, of the same place; Elizabeth Weiant, of Hersfeld, Kur Hessen, Germany, and Katharina Langenfeld, of the City of New York, and in case any of them are dead at the time of the decease of my said wife, then I direct that the share of those who are dead shall be paid to their issue, if any, or in default of issue, to the surviving brother or sisters and the issue of any deceased brother or sister."

Both the executor and executrix qualified and entered upon the discharge of their duties.

On May 7, 1896, a decree was made by this court in an intermediate accounting by the executor and executrix, by which it appears that the executor and executrix were directed to hold the balance of the personal estate existing at that time, to wit, $1,297.03, under and pursuant to the trust created under paragraph "third" of the will, and the executor has held that sum since that time, the executrix having received the income thereof, and also of the property No. 222 East Forty-First street, borough of Manhattan, city of New York, being the only real estate of which the deceased died seised. The executor is therefore accounting for this balance of the personalty, to wit, $1,297.03, the proceeds of the sale of the real estate, $14,500, and some items of rent and interest. Upon the death of the testator he left him surviving as heirs and next of kin his brother Johannes Heintz, his sisters, Katharina Langenfeld and Barbara Luckhardt, and the descendants of his sister, Elizabeth Wiegand, named "Weiant" in the will, the latter having predeceased him in the year 1889. The widow never remarried, and died on April 25, 1910. At the time of the wife's death, on April 25, 1910, the only survivor of the sisters and the brother referred to in paragraph "third" of the will was the sister Katharina Langenfeld. The said Johannes Heintz had died, and he had had seven children, two of whom, Kraft Heinz and Carl Heinz, were dead at this time, April 25, 1910, and five were living, Heinrich Heinz, Wilhelm Heinz, Friedrich Heinz, Anna Martha Moeller, and Barbara Ruppel. At the time there also was a son of Kraft Heinz, deceased, named Gottfried Kraft Franz Heinz, and two sons of Carl Heinz, deceased, viz., George Heinz and Heinrich Heinz. The sister of deceased, Barbara Luckhardt, had died and there was then living her only surviving daughter, Elizabeth Barth. Elizabeth Weigand, who had died before testator, had four children who were living at the death of Maria Heintz, the widow of testator, on April 25, 1910, viz., Johannes Wiegand, August Wiegand, Elise Boekelmann, and Heinrich Wiegand. Each of the above persons mentioned, except Gottfried Kraft Franz Heinz, George Heinz, and Heinrich Heinz, his brother, a grandnephew of deceased, had the following living issue at the time of the death of the life tenant, viz.: Heinrich Heinz, the son of Johannes Heinz, has a daughter, Caroline Buttner, who has two children, Elizabeth and Max Buttner. Wilhelm Heinz, son of Johannes Heinz, has a daughter, Augusta Bok, who has four children, Johannes, Margarete, Heinrich,

and Wilhelm Bok. A son, Wilhelm, 2d, who has three children, Erna, Wilhelm, 3d, and Luise Heinz. A daughter, Martha Spiekermann, has one child, Hermann Spiekermann, and a daughter, Johanna Heinz. Friedrich Heinz, son of Johannes Heinz, has five children, Susanna, Johannes, Pfilipp, Wilhelm, and Catharina Heinz. Anna Martha Moeller, daughter of Johannes Heinz, has five children, Johannes Conrad, Catharina, Barbara, and Susanna Moeller. Barbara Ruppel, daughter of Johannes Heinz, has eight children, Johannes, Heinrich, Friedrich, Andreas, Carl, Paul, Wilhelm, and Martha Ruppel. Barbara Luckhardt's daughter, Elizabeth Barth, has four children who were living at the time of the death of the life tenant, Barbara, Ernest, Anna, and Jacob Barth. Of the children of Elizabeth Wiegand, the following named descendants were living at the time of the death of the testator: Her son, Johannes Wiegand, has two children, Theodor Wiegand and Adolf Wiegand. Her son, August Wiegand, has four children, Wilhelm, August, 2d, Richard, and Louise Wiegand. Her daughter, Elise Boekelmann, has one child, Carl Wiegand. Her son, Heinrich Wiegand, has two children, Elsie and Ernest Wiegand. Katharina Langenfeld, the sister of testator, is still living, and has assigned her interest to her son, John Sohl. All the parties above named are still living and are parties to this proceeding. That all of the above are of full age and sound mind, except Elizabeth Buttner, Max Buttner, Johanna Bok, Magarete Bok, Heinrich Bok, Wilhelm Bok, Erna Heinz, Wilhelm Heinz, 3d, Louise Heinz, Hermann Spiekermann, Catharina Heinz, Barbara Moeller, Susanna Moeller, Friedrich Ruppel, Andreas Ruppel, Carl Ruppel, Paul Ruppel, Wilhelm Ruppel, Martha Ruppel, Barbara Barth, Ernst Barth, Anna Barth, Jacob Barth and Louise Wiegand, who are infants under the age of 14 years, and Heinrich Heinz, Pfilipp Heinz, Wilhelm Heinz, Conrad Moeller, Catharina Moeller, Johannes Ruppel, Heinrich Ruppel, Wilhelm Wiegand, August Wiegand, 3d, and Richard Wiegand, who are infants over the age of 14 years, all of whom except Pfilipp Heinz and Wilhelm Wiegand were born after the death of testator. That all of the above are residents of Germany and Austria-Hungary, except Wilhelm Wiegand, son of August Wiegand, who is a resident of Pomeroy, Ohio. The questions to be decided are the following:

Question 1. Do the following named issue of Johannes Heinz, deceased, brother of testator, take the one-quarter of the residuary estate bequeathed to Johannes Heinz, brother of testator in the following proportions: Gottfried Kraft Franz Heinz, grandson, one-seventh; Heinrich Heinz, son, one-seventh; George Heinz, grandson, one-fourteenth; Heinrich Heinz, grandson, one-fourteenth; Wilhelm Heinz, 1st, son, one-seventh Fredrich Heinz, son, one-seventh; Anna Martha Moeller, daughter, one-seventh; Barbara Ruppel, daughter, one-seventh?

Question 2. Are the descendants of the persons mentioned in question 1, their ancestors having been alive at the time of the death of the life tenant and said ancestors being still alive, entitled to any distributive share in said estate, and, if so, is the one-fourth of said residuary estate devised and bequeathed to testator's brother, Johannes Heinz, to be divided among his 41 descendants living at the time of the death

of the life tenant, to wit, Gottfried Kraft Franz Heinz, one forty-first; Heinrich Heinz, one forty-first; Caroline Buttner, one forty-first; Elizabeth Buttner, one forty-first; Max Buttner, one forty-first; George Heinz, one forty-first; Heinrich Heinz, grandson, one forty-first; Augusta Bok, one forty-first; Johanna Bok, one forty-first; Margarete Bok, one forty-first; Heinrich Bok, one forty-first; Wilhelm Bok, one forty-first; Wilhelm Heinz, 1st, one forty-first; Wilhelm Heinz, 2d, one forty-first; Erna Heinz, one forty-first; Wilhelm Heinz, 3d, one forty-first; Luise Heinz, one forty-first; Martha Spiekermann, one forty-first; Hermann Spiekermann, one forty-first; Johanna Heinz, one forty-first; Friedrich Heinz, one forty-first; Susanna Heinz, one forty-first; Johannes Heinz, one forty-first; Pfilipp Heinz, one forty-first; Wilhelm Heinz, son of Friedrich, one forty-first; Catharina Heinz, one forty-first; Anna Martha Moeller, one forty-first; Johannes Moeller, one forty-first; Conrad Moeller, one forty-first; Catharina Moeller, one forty-first; Barbara Moeller, one forty-first; Susanna Moeller, one forty-first; Barbara Ruppel, one forty-first; Johannes Ruppel, one forty-first; Heinrich Ruppel, one forty-first; Friedrich Ruppel, one forty-first; Andreas Ruppel, one forty-first; Carl Ruppel, one forty-first; Paul Ruppel, one forty-first; Wilhelm Ruppel, one forty-first; Martha Ruppel, one forty-first; each to receive one forty-first of said one-fourth of the residuary estate?

Question 3. Does Elizabeth Barth, daughter of Barbara Luckhardt, the deceased sister of testator, take the one-fourth of the residuary estate devised and bequeathed by the testator to her mother, Barbara Luckhardt?

Question 4. Are the descendants, viz., the children of said Elizabeth Barth, their mother being alive at the time of the death of the life tenant, namely, Barbara Barth, Ernst Barth, Anna Barth and Jacob Barth, entitled to any distributive share in said estate, and, if so, is the one-quarter of said residuary estate so devised and bequeathed to the testator's sister, Barbara Luckhardt, divisible among her five descendants living at the time of the death of the life tenant, namely, Elizabeth Barth, Barbara Barth, Ernst Barth, Anna Barth, Jacob Barth, each to receive one-fifth of said one-fourth of the residuary estate?

Question 5. Do the children of Elizabeth Wiegand, the deceased sister of testator, namely, Johannes Wiegand, August Wiegand, Elise Boekelmann, and Heinrich Wiegand, take the one-fourth of the residuary estate devised and bequeathed to her by the testator, equally among them, namely, each one-fourth of said one-fourth of the residuary estate?

Question 6. Are the descendants of the persons mentioned in question 5, namely, the children of Johannes Wiegand, August Wiegand, Elise Boekelmann, and Heinrich Wiegand, their parents having been alive at the time of the death of the life tenant, and they being still living, entitled to any distributive share in said estate, and, if so, is the one-fourth of said residuary estate bequeathed to the said Elizabeth Wiegand, testator's sister, to be divided among her 13 descendants living at the time of the death of the life tenant, to wit, Johannes

Wiegand, Theodor Wiegand, Adolf Wiegand, August Wiegand, Wilhelm Wiegand, August Wiegand, 2d, Richard Wiegand, Louise Wiegand, Elise Boekelmann, Carl Wiegand, Heinrich Wiegand, Elise Wiegand, Ernst Wiegand, each one-thirteenth of said one-fourth of the residuary estate?

The juridical answers to the questions thus put to the surrogate depend on the true construction of the third clause, or paragraph, of the last will and testament of Kilian Heintz, deceased. Does the term "issue" in the third clause of such will include descendants more remote than children of testator's sisters and brother, and, if it does include more remote descendants, is the distribution then to be per stirpes or per capita?

No contention is made by any one that any portion of the estate vested in the legal representatives of the two children of Johannes Heintz, who predeceased the testator's widow. As issue survived all of testator's sisters and brother no construction is required of the latter portion of the third clause of the will providing for the event that there was default of such issue.

The death of testator's widow, who was tenant for life, prescribed the time for the conversion of the realty and for the vesting of the interests under the third clause of the will. Vincent v. Newhouse, 83 N. Y. 505. When the intervening life interest expired by effluxion of time or on the widow's death but one of the testator's sisters and brother was alive. The other three had predeceased testator's widow, leaving, however, them surviving numerous children and grandchildren. Some of these grandchildren then had living parents entitled to share. In order to determine who take under the third clause of the will before the surrogate, we must first ascertain whether by "issue" the testator meant all the descendants of his sisters and brother, and in that event that the grandchildren of these sisters and brother who had parents alive should share concurrently with their respective parents entitled to share.

The term "issue," when a word of purchase and not a word of limitation, has acquired a precise legal meaning. Unless circumstances to be properly considered in the construction of a will or the context of the will itself point to a different intention on the part of the testator "issue" simpliciter is construed to mean all descendants, and, furthermore, that such descendants take per capita; issue having ancestors alive entitled to share, sharing concurrently with such ancestors. Schmidt v. Jewett, 195 N. Y. 486, 88 N. E. 1110, 133 Am. St. Rep. 815; United States Trust Co. v. Tobias, 4 N. Y. Supp. 211; Matter of Tenney, 104 App. Div. 290, 93 N. Y. Supp. 811; Phelps v. Cameron, 109 App. Div. 798, 96 N. Y. Supp. 1014; Seitz v. Faversham, 141 App. Div. 903, 126 N. Y. Supp. 801; Bassett v. Wells, 56 Misc. Rep. 81, 106 N. Y. Supp. 1068. This is the principal rule of construction to be considered in this cause. But this rule will yield to a very faint glimpse of a different intent on the part of the testator. Ferrer v. Pyne, 81 N. Y. 281. The converse of this last statement is that wherever no such intent is discernible the rule applies.

While the rule just mentioned is both a rule of construction and a

rule of property, it is such only in the total absence of any contrary discernible intent on the part of testator. Ferrer v. Pyne, 81 N. Y. 281. The real difficulty is in the application of a rule always stated so provisionally. The term "issue" in a will may in some cases be intended to mean children only, or the context and properly attendant circumstances may be taken to intend that "issue" shall take per stirpes and not per capita. The adjudged cases, although many, furnish perhaps too little precise authority for an exact solution of the cause now at the bar of this court; but this is to be considered. In any event the rule seems plain without express authority.

Before coming to the application of the rule under examination in this cause now before the surrogate, it may be well to notice briefly the vigor and extent of the rule itself, and what language in a will may be taken to subordinate the rule to the assumed intention of a testator that in effect the rule shall not apply. In England the common-law rule "that the word 'issue' when not restrained by the context is coextensive and synonymous with descendants of every degree, and that the distribution is per capita and not per stirpes," has been repeatedly applied. Jarm. Wills (6th Eng. Ed.) 1590, 1591; Hayden v. Wilshere, 3 T. R. 372; Hockley v. Mawbey, 1 Ves. Jr. 143; Wythe v. Thurlston, Amb. 555; 3 Ves. Jr. 258; Horsepool v. Watson, Id., 383. If a testator impliedly directs a division per stirpes, the rule does not apply, and children are not allowed to take concurrently with their parent. In a stirpital division children never take concurrently with their parent. A per stirpital division is not, therefore, within the principal rule. If a stirpital distribution is directed by the court, the language of the will cannot be within the rule.

The precise language which takes a will out of the operation of the principal rule has been repeatedly considered. In Sibley v. Perry, 7 Ves. Jr. 522, Lord Eldon ruled that, where the term "issue" was found in collocation with the word "parent," the testator would be deemed to have used the term "issue" in the sense of children. That decision was followed in Pruen v. Osborne, 11 Sim. 132. In Ross v. Ross, 20 Beav. 645, Sibley v. Perry was not followed, and in Ralph v. Carrick, L. R. (11 Ch. D.) 873, the Court of Appeal practically confined Sibley v. Perry to its own facts. In United States Trust Co. v. Tobias, 4 N. Y. Supp. 211, supra, Supreme Court Justice Patterson stated, in substance, that he did not regard Sibley v. Perry in any event as an authority in this state, and in point of fact he declined to recognize that case as limiting the general rule of this jurisdiction to the effect that the word issue simpliciter means all descendants. While Sibley v. Perry has no precise application to this cause, still that case and the cases just cited are typical of the difficulties sometimes encountered in the application of the rule itself. In England the Court of Appeal does not seem disposed to fritter away such a well-established rule by fanciful speculation or by the differentiation of doubtful language contained in particular wills. In Coulden v. Coulden, 77 L. J. Ch. 209, Parker, J., construed a will directing a division of property among the children of testator and their respective issue to mean that the issue were to take per stirpes, but this was because the word "respective" pointed to a stirpital distribution.

In the state of Massachusetts the legal meaning of the term "issue" has long received the close attention habitually given in that state to technical questions of some importance. It has been there held that "issue" means all descendants and that where the gift is to issue living after an intervening life estate a stirpital distribution is generally intended. The courts of Massachusetts, in other words, seem to depart from the rule and to prefer that construction of wills which favors a stirpital distribution, and they refuse to follow the common law cases in their entirety. Jackson v. Jackson, 153 Mass. 374, 26 N. E. 1112, 11 L. R. A. 305, 25 Am. St. Rep. 643; Dexter v. Inches, 147 Mass. 324, 17 N. E. 551; Coates v. Burton, 191 Mass. 180, 77 N. E. 311. According to these decisions, where the gift is made to the "issue" of several persons to take effect after a certain intervening time or interest, "issue" is held to mean descendants, and a stirpital distribution is to be implied. But it is unnecessary for us to labor in order to state the precise result reached in Massachusetts. The tendency of authority in that state only need be noticed. Of course, any modification of the old rule by persistent authority in Massachusetts can have no similar result in this state. Here we bow to no rule but our own.

But there are some other modifications of the general rule to be noticed. In Jarm. Wills (6th Ed.) 1593, it is said:

"Where a gift to the issue is substitutional or quasi substitutional the division is as a general rule per stirpes."

The proposition sounds reasonable, although no precise authority is given for it. But substitutional gifts and executory devices are very well-recognized limitations. The cases cited by Jarman in conjunction with the proposition just noticed are extremely discordant in application, and to me not precisely satisfactory authorities for the general proposition itself. The modern English decision in Coulden v. Coulden, 77 L. J. Ch. 209, noticed before, seems, however, to support the rule, now recognized in Massachusetts, that "issue" means descendants per stirpes whenever the gift to them is to take effect after an intervening interest or estate. But the court in that case construed the gift to "issue" as direct and not as a substantial gift. Certainly, whenever gifts are in the alternative or substitutional, both cannot take effect, and the gift must be direct. So clear a proposition needed no authority. It is a self-evident truth. But that decision does not solve this case. It goes very little toward it.

Having now considered the general rule, its origin, and its express adoption in this state, as well as some of its exceptions, we are prepared to apply to this will before the surrogate the positive law of this state, if that is not determined wholly by the common law itself. In Schmidt v. Jewett, 195 N. Y. 486, 88 N. E. 1110, 133 Am. St. Rep. 815, we find the court reiterating what it regards as a well-established rule, viz:

"That the words 'legal issue' when used in a will and unexplained by the context have the meaning of all descendants."

It will be observed that the court in this case makes no reference to cases where the gift to "issue" is alternative or substitutional, or to take effect in defeasance of a prior gift, or at a given point of time

subsequent to testator's death. The court in Schmidt v. Jewett leans wholly on Soper v. Brown, 136 N. Y. 244, 248, 32 N. E. 768, 769, (32 Am. St. Rep. 731). While in Soper v. Brown the facts would, perhaps, not call for the broad adoption of the rule there enunciated, it is to be observed with attention that the language of the very learned judge (Andrews) was as follows:

"But I am of opinion that the word 'issue' in a deed or will, when used as a word of purchase and where its meaning is not otherwise defined by the context, and there are no indications that it was used in any other than its legal sense, comprehends all persons in the line of descent from the ancestor and has the same meaning as 'descendants,' and that, while it embraces the children of the ancestor, it is because they are descendants in common with all other persons who can trace direct descent from a common source."

Now this language of Andrews, J., is quoted in Schmidt v. Jewett with express approval. This is nothing else than the deliberate adoption of the principal rule as a rule of construction in this state. But it is to be observed that in Soper v. Brown the gift was remainder to the lawful issue of life tenant on the death of life tenant, and thus the question now here hardly arose in that case. But no distinction appears to have been taken by the court on that account. The enunciation of the rule in Soper v. Brown, if not very guarded, is certainly plain and unequivocal. If it evinces anything, it evinces an adoption of the principal rule in its integrity. This adoption is reaffirmed by Schmidt v. Jewett.

In Ferrer v. Pyne, 81 N. Y. 281, it was held that a distribution per stirpes was intended, and that sufficient was found to take that case out of the operation of the recognized rule. In Woodward v. James, 115 N. Y. 346, 22 N. E. 150, as the court again gave expression to the statement that the rule readily yields to a contrary intent, which was found present, nothing there adjudicated can be held to favor a stirpital distribution rather than a per capita distribution under the rule itself. In Woodward v. James the court merely construed the term "legal heirs" in a particular will. The only doubt there was whether those embraced in the description took in the same way as heirs under the laws regulating descent or distribution, or, in other words, whether the testator by "legal heirs" intended to refer to a class of beneficiaries and not to the amount of their interest and the manner of their taking.

In United States Trust Co. v. Tobias, 4 N. Y. Supp. 211, the will contained a gift of a life interest to a daughter, remainder to her issue, and in the event of her death without issue the surviving children of the testator were to take, and the issue of any deceased child or children, such surviving children and the issue to take as tenants in common the share the parent would have taken, if living. The court held that the descendants took per stirpes, although the method of distribution does not seem to have been discussed. There are other adjudications on wills in this state, which while illustrative of particular tendencies in construction of distributive clauses contained in particular wills are not decisive of this cause before me. Barstow v. Goodwin, 2 Bradf. 413; Murray v. Bronson, 1 Dem. 217.

In Phelps v. Cameron, 109 App. Div. 798, 96 N. Y. Supp. 1014, the

Appellate Division for the Second Department held that all the descendants took per capita where the will gave separate portions of the residuary estate to the respective children of testator for life and upon the death of each child division of the capital was to be made "equally among the lawful issue of such child." It should be noticed that in Phelps v. Cameron the division was directed to be equal among the lawful issue, although the judgment does not expressly rest on that point.

In Matter of the United States Trust Co., 36 Misc. Rep. 378, 73 N. Y. Supp. 635, Surrogate Thomas held in this court that issue meant descendants per stirpes where a life interest in a fund was given to the testator's daughter, and, on her death, the fund was to be divided "equally to and among my daughters that shall then be living and the issue of such of my daughters as may have then died leaving issue, such issue to take the share their parent would have taken if living." But that is not this case. In Bassett v. Wells, 56 Misc. Rep. 81, 86, 106 N. Y. Supp. 1068, Mr. Justice Bischoff in a rather difficult judgment states the general rule very fully, but it was unnecessary for him in that case to notice the exceptions to its integrity.

Such is the situation of the general rule in this state. It is recognized, adopted, and differentiated wherever an intent against the rule is discernible. When such intent is not discernible, the rule stands in full force and effect.

In the will now before the surrogate it is plain that the respective lines of the three sisters and one brother of the testator were each to take one-fourth parts of the residuary. As there is nothing in the context of the will or in any relevant circumstance dehors the will limiting the technical and settled meaning of the term "issue," the rule applies in this case, and all the descendants of the respective sisters and brother are entitled among themselves per capita, and not per stirpes.

Under what I conceive to be the rule in Massachusetts, a stirpital distribution would be implied in this case on the ground that the testator intended a distribution among as many lines as he left him surviving, and that separate stocks or lines being created the testator will be assumed to have intended by the term "issue" a taking by representation or per stirpes. But to the surrogate such a construction, while often more convenient, seems in view of the well-settled meaning of the term "issue" to be constructing a will rather than an interpretation of it according to the established canons of interpretation recognized by our courts. Such a construction in effect reads into a will an intention that the term "issue" shall have another meaning besides that which the law plainly gives. The principal rule is one of law, and we are not permitted to speculate upon the meaning of words having a definite and settled legal meaning. As there is nothing in the context of the will now before the surrogate which shows or tends to show that testator intended to limit the established meaning of the term "issue" or to cut it down to those of the issue who take only by some canon or representation, I must hold that the principal rule prevails in this cause and that all the descendants of the different sisters

and brother take per capita among themselves. The questions submitted in the conceded statement of facts are therefore answered by the surrogate in conformity with this opinion as follows:

Question 1:  No.
Question 2:  Yes.
Question 3:  No.
Question 4:  Yes.
Question 5:  No.
Question 6:  Yes.

Decreed accordingly.