3. WILLS (§ 531\*)—CONSTRUCTION—MEANING OF WORDS—"ISSUE."
     The term "issue," when employed in a will, may have several legal significations, and may be the equivalent of all descendants taking per capita, or may be so limited by express or inferred intention as to mean that such descendants are to take per stirpes, and where there is any indica-

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tion that testator intended issue to take by right of representation, they take per stirpes, but the term in its primary signification means all descendants taking per capita.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1143, 1144, 1148–1152; Dec. Dig. § 531.*

For other definitions, see Words and Phrases, First and Second Series, Issue.]

4. WILLS (§ 531*)—CONSTRUCTION—MEANING OF WORDS—"ISSUE."

The term "issue," in a will whereby testator gave his residuary estate to trustees in two equal parts, in trust to apply the income for the use of two daughters for life, and on the death of either daughter without issue to pay the same to the surviving daughter or in equal portions among her issue, means all descendants per capita; but a grandchild of a daughter born after the class of persons comprised within the term was closed cannot be included.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1143, 1144, 1148–1152; Dec. Dig. § 531.*]

5. WILLS (§ 498*)—"ISSUE"—"BORN ALIVE."

A child never heard to cry, and who did not live, but whose heart beats were susceptible and could be heard, though no respiration could be induced, was "born alive," and was "issue," within a will.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1087–1089; Dec. Dig. § 498.*

For other definitions, see Words and Phrases, Born Alive.]

In the matter of the final accounting of the Union Trust Company, as substituted trustee, under the will of Christian E. Detmold, deceased, for Wilhelmina Emilie (Countess Gaston) d'Arschot. Decree ordered.

See, also, 82 Misc. Rep. 16, 143 N. Y. Supp. 732.

Miller, King, Lane & Trafford, of New York City, for petitioner.

Frederic D. Philips, of New York City, for Leonie Lentilhon Macomb.

John K. Berry, of New York City, for Minna Lentilhon Crock.

Alexander T. Mason, of New York City, for John de Navarre Macomb, Jr., individually and as administrator, etc., of Leonie Lentilhon Macomb, deceased, Marie de Tours Boyton, and Zella Lentilhon Wheeler.

Henry E. Atherton, for Union Trust Co. of New York, as temporary administrator of the estate of Countess Gaston d'Arschot.

William G. Barr, of New York City, for Union Trust Co. of New York.

Murray, Ingersoll, Hoge & Humphrey, of New York City, for Emily L. Gilford.

Kellogg & Rose, of New York City, for Eugene Lentilhon.

De Forest Bros., of New York City, for Jose de Tours Lentilhon, Count Guillaume d'Arschot, and Countess Arthur Vander Burch.

Deering & Deering, of New York City, for E. D. Lentilhon.

Geller, Rolston & Horan, of New York City, for Harry T. Stoddard and the Real Estate Title Insurance & Trust Co., of Philadelphia.

Robert Thorne, of New York City, for Johnston De Forest, Joseph de Tours Lentilhon, and Guillaume d'Arschot.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

FOWLER, S. The construction of the will of the late Christian E. Detmold is necessary for the purposes of this accounting. The third paragraph of Mr. Detmold's will is as follows:

"Third. All the rest, residue and remainder of my estate, real and personal, subject to the payment of the above annuity to my wife, if she survives me, I give, devise and bequeath to the trustees hereinafter named in two equal (though not necessarily divided) shares in trust, to invest and reinvest the same from time to time in the securities hereinafter authorized, and to collect and apply the net income of one of such shares after deducting therefrom and paying thereout one-half of said annuity to the use of each of· my said two daughters for· life.

"Upon the death of either of my said daughters, if my said wife shall survive her, I direct said trustees to retain the share of my said real and personal estate theretofore held by them in trust for such daughter, upon the further trust, to continue only during the life of my said wife, to collect and apply one-third of the surplus net income thereof (after deducting therefrom and paying thereout as aforesaid the one-half of the above mentioned annuity) to my said wife, and to distribute and pay over the remaining two-thirds thereof in equal portions to and among the issue (if any) of the daughter so dying; or if she shall leave no issue then surviving, to pay over and distribute the same to her surviving sister (if any), or in equal portions to and among the issue of such sister if' she shall then have died leaving issue then surviving. But this direction as to payment of the two-thirds of such net income of the share above set apart in trust for my daughter Wilhelmina after her death shall be subject to the exercise of the power of appointment hereinafter given to her over such share.

"Upon the death of my said wife (in case she shall have survived either of my said daughters), I give, devise and bequeath the share of my said real and personal estate, which is effected by the additional trust in the preceding paragraph of this clause created, in equal portions unto and among the issue (if any) of the daughter so having died before my said wife; or, if she shall have left no issue who shall survive my said wife, then to my other daughter, if then surviving, or in equal portions, to her issue, if she shall have died leaving issue then surviving.

"Should my said wife die before either of my daughters then and in that case upon each daughter's death, I give, devise and bequeath the share in my said real and personal estate theretofore held in trust for her in equal portions unto her then surviving issue, if· any; or, if no such issue shall then survive, I direct that her said share shall be added to the share then held in trust for my other daughter, if she shall then survive; or, if not, then I give, devise and bequeath the same in equal portions to her issue, if any, then surviving. But this direction as to the share so held in trust for my daughter Wilhelmina shall be subject to the exercise of the power of appointment hereinafter given to her over such share."

Christian E. Detmold, the testator, died July 2, 1887, leaving him surviving his widow, who died March 14, 1889, and two daughters, Zella Trelawney (Mrs. Lentilhon), and Wilhelmina Emilie (wife of Count Gaston d'Arschot). Mrs. Lentilhon died November 21, 1891, leaving issue of .her marriage her surviving. The Countess d'Arschot survived her husband, and died testate February 21, 1912, without issue. Upon the death of Madame d'Arschot the fund held in trust for her for her own life devolved, pursuant to the third paragraph of her father's will, set out above. Those thus entitled are the offspring of the marriage of Madame d'Arschot's sister, Mrs. Lentilhon. Who of Mrs. Lentilhon's offspring so take and hold under Mr. Detmold's will and how they take is the primary question for my consideration.

The scheme of Mr. Detmold's will indicates that it was his intention to divide his residuary estate into two equal portions, and to bequeath one to each of his daughters, subject to an annuity in favor of the testator's widow. The annuity is by the widow's death now out of the case. Upon the death of either daughter the portion theretofore held in trust for her is given to her issue, if any, and if none, to the other daughter, if alive, and if not, to the surviving issue of such last surviving daughter. The question of construction concerns the meaning of the term "issue" in the third paragraph of Mr. Detmold's will. Some new light has been shed on the highly technical meaning of the term "issue" by the recent and exhaustive decision of the Court of Appeals on the will of the late Dr. Valentine Mott, which, by reason of its importance, I shall hereafter consider at length.

[1] Before taking up the question of construction or interpretation, in the light of the adjudications, let me point out that the use of adjudications in cases of interpetration is, in my judgment, very often inverted. The first and cardinal rule of interpretation of wills is the application of the meaning of the testator, not the meaning of the adjudications. "We should always beware," as said in substance by an English judge, the Lord Justice Lindley, "of finding something in the adjudications which is not in the will, and thereby raising a doubt which, in turn, we solve by the same authorities." In re Treadwell, Teffray v. Treadwell [1891] 2 Ch. 640, 653, 654. The Lord Justice knew, as we all know, that few wills employ precisely the same limitations and fewer use the same language. On another occasion the same distinguished judge said:

"I do not see why, if we can tell what a man intends, and can give effect to his intention as expressed, we should be driven out of it by other cases or decisions in other cases" (no doubt meaning on different wills).

And then this learned judge adds:

"I always protest against anything of the sort. Many years ago the courts slid into the bad habit of deciding one will by the previous decisions upon other wills; but if you once get at a man's intention, and there is no law to prevent you from giving it effect, effect ought to be given to it." In re Horgan [1893] 3 Ch. 222, 228.

With these opinions of the learned Lord Justice I have long, but only in so far as they apply to principles governing the interpretation of wills is concerned, been in accord. Obviously the language of this learned judge was not intended to apply to adjudications governing the construction of terms of art, used in a highly artificial will, framed by a most skillful and learned lawyer. Interpretation and construction of written documents are not the same thing. In a case of construction different canons are resorted to, yet I admit always on the juridical theory that it is for the purpose again of giving effect to testator's intention. But the common-law limitations of property framed in stereotyped and technical language are rarely to be adjudicated by new principles. They are subject to what is called "the rules of property."

[2] A rule of construction is one which either governs the effect of an ascertained intention or points out what a court should do in the absence of express or implied intention. A rule of interpretation is

one which governs the ascertainment of the meaning of the maker of a written document. If a testator has expressed his intention, no rule of interpretation is relevant. Consequently, as Domat well says:

"Doubts which arise on testaments are to be decided differently according to the different causes whence they proceed."

As great an authority on wills as Williams has pointed out in effect that in matters of interpretation the highly refined rules taken out of the Roman law have gained the ascendancy all over Europe and are now gaining ground in common-law countries where chaos has long reigned. In matters of construction in common-law countries, as all rules of property are necessarily local, I think the rules are largely of domestic origin, and in my judgment should remain so and not be deviated from or altered except by the Legislature. In this case Mr. Detmold's intention is clear enough; the question is what his words express or mean, and that only. To my mind this is a case of construction only and not of interpretation.

[3] When the term "issue" is employed in a will, it may have several legal significations. It may be the equivalent of all descendants taking per capita inter se, or it may be so limited by express or inferred intention as to mean that such descendants are inter se to take per stirpes and not per capita. In Matter of Bauerdorf, 77 Misc. Rep. 663, 138 N. Y. Supp. 673, I reviewed at length the adjudications which hold that when employed simpliciter "issue" signifies all descendants, and, furthermore, that such descendants shall take per capita inter se; issue having ancestors alive entitled to share concurrently with such ancestors. Matter of Bauerdorf, I may note, has been since cited by both the Appellate Division and the Court of Appeals without any indication of disapproval. In Matter of Bauerdorf I pointed out very plainly the deliberate departure in Massachusetts from the strict common-law meaning of the term "issue." There is doubtless much to be said for stirpital rather than per capita divisions of property in our country. Yet I think the rule is plain in this state.

In the very recent adjudication on the will of Dr. Valentine Mott, the Appellate Division of this Department and the Court of Appeals, in review, did not apply the common-law rule to its full extent, but their rulings afford an example of the secondary meaning of the term "issue" in Re Farmers' Loan & Trust Co., 213 N. Y. 168, 107 N. E. 340; 163 App. Div. 533, 148 N. Y. Supp. 574. It is evident from the opinion of the Court of Appeals that the court will accord the secondary meaning to the term "issue" in a limitation in a will, whenever there is anything in the will itself indicating testator's preference for a stirpital, rather than a per capita distribution among his descendants. It does not seem to matter whether such hypothetical intention is gathered from clauses remote from the particular limitation under construction, or whether it is contained in the body of the limitation itself. For this purpose the intent found in one particular limitation of a will may, by relation, be transferred to another part of the same will. The testator's intent or preference once established for one purpose pervades the entire will.

Prior to the decision on the will of Dr. Mott the common-law rule which has just been referred to was generally in this state applied in

its full vigor. Does the decision referred to in any way modify the old rule of construction? I think not. The Court of Appeals, it will be observed, says:

"To determine the meaning of the word 'issue' in the fifth subdivision of the will we must read the latter subdivision in connection with the fourth. The first use of the word 'issue' we find in the provision: 'In case of the death of either of my children before the division of my estate I give, devise and bequeath what would have been his or her share if living to his or her issue, if any, such issue to take equally what would have been the parent's share.' A fair meaning of this provision is that the issue are to take by right of representation."

It may, therefore, be regarded as settled in this state that where there is any indication that the testator intended the issue to take "by right of representation" they do not take per capita but per stirpes. The Court of Appeals did not, I think, intend to hold in Matter of Mott that in every case where issue as a class take in representation of an ancester a stirpital distribution will be implied. What the court did hold, as I conceive, was that where a gift is to issue and the language is not circumscribed all descendants are included, but where the apparent purpose of the testator was to have "issue" take amongst themselves by right of representation, then the distribution amongst the class of persons included in "issue" would be held to be a stirpital distribution. The Court of Appeals did not, I think, in the Case of Mott's Will mean to lay down that where issue take under the provisions of a will solely because the alternative provision in favor of an ancestor has lapsed, that then the issue are to take per stirpes. The court found in Dr. Mott's Will an intention on the part of the testator to have the issue participate amongst themselves by right of representation; that is, the phrase "by right of representation" was not intended to apply to the gift to the issue as a class, but to apply to the taking by the respective members of the class amongst themselves. But as the Appellate Division said on Dr. Mott's Will, the question there was an exceedingly close one. 163 App. Div. 533, 148 N. Y. Supp. 574. As the appeals on Dr. Mott's Will were from my own judgment, I may add, with due deference, that with this conclusion of the Appellate Division I am naturally in accord.

A careful consideration of the language of the will before the court in the case on Dr. Mott's Will justifies my conclusion. Dr. Mott directed that each of his children should receive one-ninth of his estate, and he provided that in the event of the death of any child before the distribution of the estate his or her share should belong to his or her issue. The testator added a provision that each of the children should take equally what would have been the parent's share. In the absence of that provision the "issue" clearly would have taken per capita. To conclude that the distribution should be in that way, even though such additional clause was included by the testator, the court held, in the Case of Dr. Mott's Will, would be giving no effect to testator's language directing that the issue should take the parent's share. Though the question before the Court of Appeals on the Mott Will depended upon the provision in the fifth subdivision in favor of the grandchild, the court looked beyond and held that the term "issue" in the fifth

subdivision was used with the same meaning as in the gift to the children embodied in the fourth subdivision. In effect they construed the language in the fourth subdivision and applied it to the fifth subdivision. There is doubtless great justification for the conclusion reached by the Court of Appeals, and it doubtless better accords with the general favor in which stirpital divisions stand in modern life.

But we may, I think, safely conclude that the Court of Appeals did not intend, in the Case of Mott's Will, to change a well settled rule of construction. Matter of Bauerdorf, 77 Misc. Rep. 656, 138 N. Y. Supp. 673, was cited by the Court of Appeals in Dr. Mott's Case. Had the Court of Appeals intended to lay down the rule that where the gift to issue as a class is by way of representation, that is, a gift in lieu of a gift to an ancestor, the issue always take per stirpes, it would have been obliged to overrule my judgment in Matter of Bauerdorf, because in that case the gift to the issue of the brothers and sisters was an alternative or substitutional bequest. In the will of Mr. Detmold, now here for construction, there is nothing to show that by "issue" he meant others than his descendants. Therefore, under the authorities, the distribution of the portion hitherto held in trust for the Countess d'Arschot must be distributed amongst the lineal descendants of her sister, the late Mrs. Zella Trelawney Lentilhon.

But the inquiry remains: Do such descendants take irrespective of whether or not their parents survive? That is, do the issue of the said Zella Trelawney Lentilhon take per stripes or per capita inter se?

The rule of construction by which the term "issue" has received a well defined signification ought to be and is, I think, well settled. Under the unrestricted rule, all descendants take, and such distribution amongst them is, as I pointed out in the Bauerdorf Case, per capita. Unless there is some indication in a will, or in circumstances which may properly be considered upon the construction of a will, to point out that the testator intended to prescribe a narrower class of persons or a different rule of distribution, the general doctrine indicated has always been applied. But it has been just as firmly held also that the rule of construction yields to a contrary intent, if only faintly expressed. It will serve no useful purpose to re-examine the authorities on this point, especially in view of the exhaustive discussion so recently made by the Court of Appeals (December 1, 1914) in Matter of Farmers' Loan & Trust Company, as Successor Trustee under the Last Will and Testament of Valentine Mott, Deceased. In that case, in my opinion, the Court of Appeals only reiterated the doctrine that the term "issue" in its primary signification must always be construed to mean all descendants taking per capita, but that a distribution per stirpes may be implied where the testator in any possible manner indicates a purpose to have those included within the class take by way of representation.

[4] In Mr. Detmold's will, now here for construction, there is nothing to indicate that the testator used the term "issue" in any other than its primary and most ordinary signification. It is true that the gift to the issue of Zella Trelawney Lentilhon is a gift in substitution for the gift to her, or, in other words, an alternative bequest to vest only

if she do not take; but ipso facto there is nothing from which an intention can be construed that the issue should take amongst themselves by way of representation. The issue as a class, it is true, is substituted; but representation amongst them is not provided for in any way. This case is not like that on the will of Mrs. Susan B. Milnor, before me lately, where I held that a stirpital distribution was intended by the testatrix. In re Milnor's Estate, 149 N. Y. Supp. 1064.

The term "issue" in the will of Mr. Detmold means all descendants per capita, and I hold that it falls within the well-settled rule, laid down in Matter of Mott, supra, Schmidt v. Jewett, 195 N. Y. 486, 88 N. E. 1110, 133 Am. St. Rep. 815, and Soper v. Brown, 136 N. Y. 244, 32 N. E. 768, 32 Am. St. Rep. 731.

Having reached the conclusion that all of the descendants of Mrs. Lentilhon participate, the claim of her grandchild John de Navarre Macomb, 3d, must next be disposed of. As he was born 17 months after the class of persons comprised within the term "issue" was closed, he cannot be included within that class.

[5] One further question, which is one of mixed law and fact, arises in determining the right of the administrator of the child Leonie Lentilhon Macomb to a share of the estate. In June, 1912, a child was born to Leonie Lentilhon Macomb, the daughter of Zella Trelawney Lentilhon. It was never heard to cry. No respiration could be induced and the child did not live. Its heart beats, however, had been perceptible and could be heard. Under the authorities the child was born alive, so as to permit its administrator to take a share of the estate. Witthaus & Becker, Medical Jurisprudence, vol. 2, p. 526; Paine's Case, cited Coke on Litt. 29 b; Ewell, Manual of Medical Jurisprudence, c. 9, pp. 111, 112; Marsellis v. Thalhimer, 2 Paige, 35, 21 Am. Dec. 66; Hone v. Van Schaick, 3 Barb. Ch. 488, 508; Goff v. Anderson, 91 Ky. 303, 15 S. W. 866, 11 L. R. A. 825. It is no longer the rule, if it ever was so, that the new-born babe must be heard to cry in order to establish evidence of life. The crying of the child is one legal test of life in a new-born babe. But it is not the sole test. Here the medical gentleman in attendance on the mother very positively swore on the stand before me that the child was born alive. This evidence was not in any way contradicted. This is enough in this case to establish that the child was born alive. The administrator of the child so born alive is entitled to its share.

The Countess d'Arschot died on February 21, 1911, without issue. She left a will by which she attempted to exercise the power of appointment given to her in the will of her father, the testator herein. An action has been brought in the Supreme Court in which the complaint demands judgment that the will of the Countess d'Arschot be adjudged invalid, and the trustees in this accounting ask that they be permitted to retain the sum of $50,000 pending the final determination of that action. If it is held that the will is valid, the trustees must pay over to the executors of the estate of the Countess d'Arschot the sum of $30,000, with interest from the date of her death. But, as they will retain the $30,000 attempted to be disposed of by the will of the Coun-

tess d'Arschot, this sum will draw interest until it is paid over, so that there is no occasion for their retaining an additional sum out of the trust estate for the payment of interest. There will, however, be costs and disbursements on a supplemental accounting, and there may be some small items of interest charges. I think $5,000 is sufficient to cover these contingent payments. There is no need of the trustees retaining any sum for transfer tax purposes, because if it is held that the will is valid the transfer tax will be imposed on the estate of the Countess d'Arschot, while if the will is held to be invalid and the attempted exercise of the power ineffective no transfer tax will be imposed, as the testator died in 1887 and the property was transferred to his descendants. The question of advancements will be determined upon the settlement of the decree.

Settle decree and tax costs on notice.