We are therefore of the opinion that defendant's insistence that it should be satisfied of the safety and sufficiency of plaintiff's equipment by the inspection and certificate of the board of fire underwriters was reasonable, and that the fact that such a certificate could not be procured without the payment of a small and reasonable fee did not require defendant to furnish current in the absence of such a certificate. If this be so, defendant was not liable for the penalties prescribed by the statute. Other questions have been discussed at length in the briefs, but in the view we take of the case we do not find it necessary to consider them.

The judgment and order appealed from are reversed, with costs and disbursements, and the complaint dismissed, with costs; the finding that defendant had unlawfully refused to furnish electric current to plaintiff on demand being also reversed. All concur.

---

(170 App. Div. 176)

### In re UNION TRUST CO. OF NEW YORK.

### In re DETMOLD'S WILL.

(Supreme Court, Appellate Division, First Department.   December 3, 1915.)

WILLS ⬯531—CONSTRUCTION—TAKING PER STIRPES OR PER CAPITA—"ISSUE."

A testator gave his wife an annuity, to be paid out of the net income of property given in trust for two daughters, W. and Z. The residue of the estate was given in trust for such daughters for life. If the wife died before either of the daughters, then upon each daughter's death he gave the share held in trust for her to her then surviving issue, if any, and if no such issue survived, her share was to be added to the share then held in trust for the other surviving daughter, the share of the surviving daughter to be given to her issue, if any, surviving at her death. If the wife survived either of the daughters, on the death of the wife the share held in trust to provide the annuity was to be divided in equal portions among the issue of the daughter so having died before the wife, or if she should have left no issue surviving the wife, then to the other daughter, or in equal portions to her issue. The daughter W. survived the daughter Z. and died without issue. *Held*, that the issue of Z. took the share passing to them upon the death of W. per stirpes and not per capita, and a granddaughter of Z., who was living at the time of W.'s death, and whose mother was also living at such time, was not entitled to share in the distribution, as the extension of the rule that "issue" is synonymous with "descendants" creates a great inequality, where all descendants take equally, irrespective of their relationship to the testator, and in many cases results in a distribution contrary to the testator's intention.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1143, 1144, 1148–1152; Dec. Dig. ⬯531.

For other definitions, see Words and Phrases, First and Second Series, Issue.]

Dowling, J., dissenting.

Appeal from Surrogate's Court, New York County.

Proceeding for the judicial settlement of the account of the Union Trust Company of New York, as substituted trustee under the will of Christian E. Detmold, deceased. From portions of a decree of the

Surrogate's Court construing the will (89 Misc. Rep. 69, 151 N. Y. Supp. 246), one of the parties appeal.    Modified and affirmed.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and DOWLING, JJ.

James K. Deering, of New York City, for appellant.

Egerton L. Winthrop, Jr., of New York City, for infant respondents Emilie L. Gilford and others.

Albert De Roode, of New York City, for infant respondents Boynton and others.

Daniel J. Mooney, of New York City, for infant respondents Lentilhon and others.

John Reilly, of New York City, for infant respondent Elizabeth W. B. Gilford.

Miller, King, Lane & Trafford, of New York City, for respondent Union Trust Co. of New York.

INGRAHAM, P. J.    This is an appeal from the surrogate, involving the construction of the will of Christian E. Detmold, who died a resident of the county of New York on July 2, 1887, leaving a last will and testament which was duly admitted to probate.    By this will the testator gave to his wife an annuity of $8,000, which was to be paid out of the net income of his real and personal property thereafter given in trust for his two daughters.    By the third clause of the will all the rest, residue, and remainder of his estate, subject to the annuity to his wife, he gave to his trustees thereafter named in two equal shares, in trust to collect and pay the net income of one of such shares, after deducting one-half of said annuity, to the use of each of his said daughters for life.    The testator's wife died March 14, 1889, leaving her surviving two daughters, one Zella, and the other Wilhelmina, Countess d'Arschot.    Zella died November 7, 1891, leaving her surviving eight children.    The Countess d'Arschot died June 21, 1912, without issue.    Zella had one granddaughter, named Leonie, who was born alive on June 21, 1912, and died on the same day.    The question presented was: Who was entitled, upon the death of the Countess d'Arschot, to the share left in trust for her?

After making provision for the death of either of the daughters during the life of his wife, the will provides:

"Should my said wife die before either of my daughters then and in that case upon each daughter's death, I give, devise and bequeath the share in my said real and personal estate theretofore held in trust for her in equal portions unto her then surviving issue, if any; or, if no such issue shall then survive, I direct that her said share shall be added to the share then held in trust for my other daughter, if she shall then survive; or, if not, then I give, devise and bequeath the same in equal portions to her issue, if any then surviving."

Wilhelmina survived the testator's widow, and also her sister Zella, and thus this clause of the will became applicable, "then I give, devise and bequeath the same in equal portions to her issue, if any then surviving," subject to the exercise of the power of appointment given to Wilhelmina.

156 N.Y.S.—3

The surrogate then found as a conclusion of law that it was the testamentary intent of the testator that the word "issue," in article third of the will, should include descendants to the remotest degree, without limitation to a particular generation; that subject to the power of appointment created in and by article fifth of the will, the remainder of the trust under the will for the benefit of the Countess d'Arschot became distributable upon her death in equal shares per capita among all the descendants of the testator then living or in being; that Leonie, an infant child of one of the daughters of Zella, having been born alive on June 21, 1912, the day of the death of the Countess d'Arschot, was entitled to a distributive share of the remainder of the trust for the benefit of Countess d'Arschot, although the mother of Leonie was also living at the time of her death and is still alive. This decree depends, therefore, upon the question as to whether the testator intended that the property held in trust for the Countess d'Arschot should be distributed among the descendants of her sister Zella per capita and not per stirpes, or whether it was the intention of the testator that in case of Zella's death before her sister, the Countess d'Arschot, the children of the daughter Zella should take per stirpes, the descendant of any deceased child taking her parent's share by way of representation.

The rule to be applied in such a case was before this court in the case of the accounting of Farmers' Loan & Trust Company, construing the will of the late Valentine Mott, in 163 App. Div. 533, 148 N. Y. Supp. 574, and on appeal before the Court of Appeals in 213 N. Y. 168, 107 N. E. 340. The question there was as to the distribution of the share of the testator's estate to be held in trust for his granddaughter, Fannie Mott. The clause in Dr. Mott's will under which the question arose was as follows:

"In case of the death of either of my children before the division of my estate, I give, devise and bequeath what would have been his or her share, if living, to his or her issue, if any, such issue to take equally what would have been the parent's share. If no issue, then I give, devise and bequeath such ninth part to my surviving children and the issue of those deceased."

The granddaughter, Fannie Mott, afterward became Fannie Mott Campbell. She died in 1912, leaving two daughters. One grandchild was the child of one daughter, and three were the children of the other daughter. As the Court of Appeals there said:

"The will gave this share of the estate, on the death of Mrs. Campbell, to her 'issue'; and the meaning of that term as here used is the question for decision."

The surrogate in that case, as in this, held that the word "issue" meant descendants, and was not limited to children, and division should be made per capita among the descendants of every degree. In that decree the two children of Mrs. Campbell and the four grandchildren were entitled each to one-sixth of the share in question. In stating its conclusion the court said:

"We agree with the learned surrogate that the word 'issue' was intended to include descendants; but we do not share his view that the gift was to be made per capita, with the result that children would take concurrently with

their living parents. * * * We think that the will reveals a purpose that the issue should take per stirpes. * * * The rule is that, unless some other meaning is given to it by the context, the word 'issue' is not confined to children, but includes descendants in any degree. * * * Another meaning will not readily be given if the result would be to divert the gift from the direct line of descent. Where there is a gift to a child or grandchild for life, and over on the death of such child or grandchild in default of issue, the courts have held it to be 'an unnatural construction which would exclude all but the immediate children of the first taker, in favor of the other branches of the family. The reasonable construction in such cases is that the gift over was intended to take effect only on the extinction of the line of descent from the first taker.' * * * This testator provided that, in case of the death of his children before the wife's life estate had terminated, their issue should take their share, and only in default of issue was there a gift to others. To say that by the gift to issue he meant children, but not grandchildren, is to impute to him a purpose to disinherit one branch of descent to the enrichment of another. There is nothing in this will to justify us in deviating from the settled rule that a construction leading to such consequences ought generally to be avoided. * * * On the contrary, this testator seems to have used the words 'children' and 'issue,' not at all as synonymous, but with accurate discrimination. * * * We are thus brought to a consideration of the question whether the gift to the issue of Mrs. Campbell was one per capita or per stirpes. If it was per capita, children and grandchildren take concurrently. If it was per stirpes, they take by representation. * * * We think that it may fairly be gathered from the context that the gift was to be per stirpes. The presumption in this state favors a per capita distribution, * * * but the presumption yields to 'a very faint glimpse of a different intention.' * * * Equality of division is to be preserved, but only within the limits consistent with a division per stirpes."

With the rule as thus stated, we are to examine this will to see if we can find in it an intention that the issue of a daughter dying before the life beneficiary should take per stirpes and not per capita. The learned surrogate in his opinion examines this case of Dr. Valentine Mott's Will, and states that in his opinion it only reiterated the doctrine that the term "issue" in its primary signification must always be construed to mean that all descendants take per capita, but that a distribution per stirpes may be implied where the testator in any possible manner indicates a purpose to have those included within the class take by way of representation; and he held that in the will in question there is nothing to indicate that the testator used the term "issue" in any other than its primary and most ordinary signification; that the issue as a class, it is true, is substituted, but representation amongst them is not provided for in any way. It is in this conclusion that I disagree with the learned surrogate. The share to be held in trust for each of the daughters of the testator was upon her death to be divided among her issue. In determining this class, I think it is quite important to consider the whole scheme of the testator. He evidently wished to insure his wife an annuity of $8,000 per annum during her life, and, subject to that annuity, his two daughters during their respective lives were to have the income of his estate. Upon the death of each daughter, the principal of the share held for such daughter was to be divided among her issue, and if either daughter died during the life of his wife, the income of her share not necessary to provide for one-half of that annuity was to be paid to the issue of the daughter dying if she left issue, or if she

left no issue then to her surviving sister, or in equal parts to and among the issue of such sister if she should have died leaving issue then surviving. Most careful provision is made to meet any contingency that might arise; but it seems to me quite unreasonable to suppose that the testator intended that this surplus income, which had been reserved for one of his daughters upon her death, should have been divided among all of his grandchildren living, the descendants of his daughter taking, regardless of the question whether their parents were alive or not. One of his granddaughters may have had no children, or one child, while another granddaughter may have had several children, which would create a very unequal distribution of this income, giving to the family of one grandchild, although that grandchild was still living, a much larger proportion of this surplus income than in the case of a grandchild having no children. I think it was reasonable to suppose that the testator had in mind an equality in distribution of this income. He says:

"Or in equal portions to and among the issue of such sister if she shall then have died leaving issue then surviving."

To hold, if a daughter dying left children and grandchildren and great-grandchildren, that all should join in such distribution of income, regardless of any idea of representation among his grandchildren, would be an unequal and not an equal distribution. Again, that idea of equality is preserved in the subsequent provision of this clause of the will which distributes the share of the daughter dying before his wife. He there directs, upon the death of his wife in case she should survive either of his daughters, that the share which was held in trust to provide for the annuity to be paid to his wife should be divided—

"in equal portions to and among the issue (if any), of the daughter so having died before my said wife; or, if she shall have left no issue who shall survive my said wife, then to my other daughter, if then surviving, or in equal portions, to her issue, if she shall have died leaving issue then surviving."

Thus the predetermining intent in this will is equality among his grandchildren; and that same idea of equality is continued in the succeeding clause, which provides for his wife dying before either of his daughters. In that case, upon each daughter's death he devises and bequeaths the share held in trust for her in equal portions unto her then surviving issue, if any, or, if no issue shall then survive, that her share shall be held in trust for his other daughter if she then survive, and if not then the testator gives the same—that is, the principal—in equal portions to her issue if any then survive. As before stated, the controlling intention all through this will is equality. And this equality is not taking all the descendants of the daughter as a class, no matter what their degree of relationship should be to the testator, but equality among the children of his daughter, leaving their descendants to take the share of the parent dying before the death of the life beneficiary. It certainly would not be equality to give seven shares to one granddaughter having six children and one share to a granddaughter having no children, and such a construction would seem to

defeat what is to me the controlling intention as expressed in this will. It may be that in this construction of the will an intention to confine this distribution per stirpes rather than per capita has gone beyond any reported case, but after examination of a great many wills I am clearly of the opinion that to give to the word "issue" a construction that would include all descendants, whether their parents were living or not, has resulted in a distribution of estates which has really been contrary to the testator's intention, and which has really worked great injustice among a testator's descendants; and so I think, in construing such a will, that equality means, not equality of all descendants, but equality in the branches into which the person's family are naturally divided. The testator leaves his estate to his grandchildren, subject to a life estate in a child. The natural division is among the grandchildren who survive the life beneficiary. It is not to the descendants of those grandchildren while the grandchildren are alive. And while he contemplates the possibility of the death of a grandchild leaving descendants, and desires that such descendants shall also be included, it seems to me, where equality is provided and is the predominating intent, that it is only in the case of the death of the grandchildren that the grandchildren's issue should be included. And thus in the study of this will I cannot avoid a feeling that this was what the testator intended by equality, and not such inequality as would result from a division of this share among all the descendants of a grandchild where the grandchild was still alive. The extension of this rule that "issue" is synonymous with descendants creates no hardship, where all of the descendants are of the same degree of relationship to the testator; it creates a great inequality where all descendants take equally, irrespective of their relationship to the testator; and it is this inequality, which would result from the affirmance of the decree of the learned surrogate, which I think we should prevent.

If these views are adopted, it would result in a modification of the decree by determining that the share of the Countess d'Arschot is to be distributed among the issue of her sister per stirpes, and, as thus modified, affirmed, with costs to all parties appearing on this appeal, payable out of the estate. Settle order on notice.

CLARKE, LAUGHLIN, and SCOTT, JJ., concur.

DOWLING, J. (dissenting). The primary and technical meaning of the word "issue" is equivalent to "descendants," and this meaning does not give way to any modification or limitation, in the absence of a clear intent upon the part of the testator to give it another meaning. Dedecent's will was a carefully drawn document, which gives every evidence of the utmost deliberation and caution in its preparation, and of a careful use of the appropriate legal terms by its draughtsman. I can find in it no such expression of a clear intention by the testator to limit the meaning of the word "issue" as would bring it outside of the ordinary rule.

I therefore am in favor of the affirmance of the decree appealed from.