Maximilian Moss, S.
This is a final accounting by the trustee in respect of the residuary trust which terminated upon the death of testator’s widow and life beneficiary on April 16, 1957. In conjunction therewith the court is required to construe the will, particularly article “ Eighth ” subdivision “ (2) ” thereof. The construction involves the applicability of section ,47-a of the Decedent Estate Law which reads as follows: ‘ ‘ If a person dying after this section takes effect shall devise or bequeath any present or future interest in real or personal property to the ‘ issue ’ of himself or another, such issue shall, if in equal degree of consanguinity to their common ancestor, take per capita, but if in unequal degree, per stirpes, unless a contrary intent is expressed in the will.” (Added by L. 1921, ch. 379, eff. April 30, 1921.)
Testator died on December 10, 1936 leaving a will dated November 14, 1930 and two codicils, all of which were duly admitted to probate in this court on December 28,1936. Letters testamentary were issued to the widow and Guaranty Trust Company of New York who were the nominated executors, and letters of trusteeship were issued to the trust company now accounting. Testator was survived by his widow, a stepson, a brother Thomas who has since died, a nephew who is the son of a predeceased brother, and a brother William. William, who died in 1942, was the primary remainderman in the article of the will to be construed. The latter was survived by an only child now known as Mildred Heeney. She and her first husband were divorced and both subsequently remarried. The husband was given custody of their two daughters who were born in 1940 and 1943 respectively. The construction affects the conflicting interests of their two minor children on the one side and of their mother on the other, as secondary remaindermen. The mother’s interest is said to be subject to the claims of assignees, subassignees and judgment creditors.
By article ‘ ‘ Eighth ’ ’, testator created a residuary trust with income payable to his wife for life with right to invade principal. *725 Upon her death, the trustee was directed to 1‘ divide and pay over the principal of such (residuary) trust, or so much thereof as shall then remain, as follows: “ (2) Nine-twentieths thereof to my aforesaid brother William W. Gardiner, or if he then be dead to his descendants then living, or if neither he nor any descendant of his then be living, to my aforesaid nephew Franklin Gardiner, or if he then be dead, to his descendants then living, or if neither he nor any descendant of his then be living, then in equal parts to and among the following, viz.” (the names of five religious and charitable institutions are set forth).
William W. Gardiner having predeceased the life beneficiary, the question at issue is whether the nine-twentieths part of the remainder given to him if living, or if dead to his “ descendants ”, is to be distributed per stirpes or per capita. If testator’s gift to his brother’s “ descendants ” was one per stirpes they take by representation, and Mildred Heeney or her assignees would be entitled to receive her father’s share to the exclusion of her two minor children. If, on the other hand, the gift was per capita, her two daughters would each receive a one-third share and the assignees and judgment creditors would have a claim to the one-third share of Mildred.
The rule was firmly established under common law that a gift to “issue” or to “descendants” was presumed to be per capita. The Legislature in 1921 enacted section 47-a of the Decedent Estate Law, which abolished the common-law presumption and provided a statutory per stirpes presumption when the word 1 ‘ issue ’ ’ was used in a will or, as interpreted by the courts, in a deed of trust (Whitehead v. Ginsburg, 197 App. Div. 266; Matter of Libby, 206 Misc. 723). The amendment did not refer to the word “ descendants ”, despite the fact that the presumption at common law was equally applicable to “ descendants ”. The court must, therefore, determine, among other things, whether the word ‘ ‘ issue ’ ’ in the aforesaid section of the Decedent Estate Law is to be interpreted as embracing the word “ descendants ”. Additionally, since either the common law or the statutory presumption must give way to testator’s true intent, the court must consider the will as a whole and the surrounding circumstances.
The coverage of the statute will be considered first. The legislative history of section 47-a sheds no light on the question of coverage, no reference being found to the term “ descendants ’ ’. The same is true with regard to similar legislation proposed in 1917, which also was confined to the word 1 ‘ issue ’ ’ (see Matter of Van Cleef, 99 Misc. 405). The term “ descend *726 ants ” is well known to the Legislature and is used purposefully in many instances either alone or jointly with “ issue ” or other terms of kinship. Its primary use in the Decedent Estate Law is in the statute of descent and distribution (§ 83). Other references, which the courts have construed in ways not relevant in this instance, appear in section 17 (Matter of Plaster, 179 Misc. 80, affd. 266 App. Div. 439, affd. 293 N. Y. 822; Matter of Holyland, 116 N. Y. S. 2d 628) and in section 29 (Matter of Hall, 272 App. Div. 430; Van Beuren v. Dash, 30 N. Y. 393). The term is implied in section 26 (Matter of Radt, 6 Misc 2d 716). In addition, at times the term is incorporated in the phrase “ terms of like import ” as in section 47-c (Matter of Waring, 275 N. Y. 6; Matter of Blazej, 175 Misc. 283).
The court’s attention has not been called to any appellate court decision dealing with the question of coverage and its independent research has not disclosed any. The first case on the subject decided in 1948 holds that section 47-a does not apply to the term “ descendants ” in a will, but the court found that testatrix’ language clearly showed an intent for distribution per stirpes (Matter of Walbridge, 192 Misc. 746). This case was cited in Matter of Bond (127 N. Y. S. 2d 693) without any reference to the section’s coverage and presumably only as authority for stirpital intent on the basis of testamentary language. As against the holding in Matter of Walbridge, two cases decided in 1954 hold that the section does cover the word “ descendants ” (Matter of Russell, 133 N. Y. S. 2d 52; Matter of Libby, supra). The latter case quotes Professor Powell’s criticism of the limited application of the section to “issue” in the Walbridge case as disregarding the spirit of the statute (3 Powell, Real Property, p. 187, n. 47). Counsel call the court’s attention also to the following text: “Inasmuch as
‘ issue ’ and ‘ descendants ’ are synonymous terms, it would seem that the statute may be deemed to control the meaning of the latter term” (2 Davids, New York Law of Wills, § 674) and to the same view expressed in Warren-Heaton on Surrogates’ Courts (vol. 7, § 47, par. 2). Nevertheless, and with due deference to these respected authorities, a careful analysis of the question involved and a review of the cases leading to the enactment of section 47-a, bring this court to the conclusion that the statute was not intended to cover the word “ descendants ” and that the common-law presumption still controls in respect thereof.
In the eases cited above a stirpital intent appeared in the language of the will, to which the courts necessarily gave effect. *727 The matter of coverage of the statute was actually of secondary or no consideration. Moreover, they relied on precedents in which the term construed was ‘ ‘ issue 5 ’, the term ‘1 descendants ” being used only as one of reference and definition. Professor Powell mentions no authority for the critical footnote comment. The only authority cited to support the view in Davids (supra) and Warren-Heaton (supra) is Whitehead v. Ginsburg (supra) in which the majority construing a presection 47-a will found a stirpital intent at common law by reason of the language of the will read as a whole. The court in that case again relied upon precedents construing only the word “ issue ” where equality of treatment was held indicative of stirpital intent, and applied the same presumption to ‘ ‘ lineal descendants” as being synonymous with “issue”. Only in passing did the court refer to section 47-a, which had just been enacted, but it did not state that it covered “ descendants ” since that was not necessary to its decision. As to the criticism that an interpretation of the statute limiting it to “ issue ’ ’ disregards its spirit, the court must be mindful of the well-known rule that a statute in derogation of the common law must be strictly construed. Furthermore, the court is of the view that the spirit and purpose of section 47-a was intended to involve only the term “ issue ” and not the term “ descendants ”, and that the Legislature did not intend to leave to surmise, conjecture and inference such an important matter as the alleged coverage of the word 1‘ descendants ’ ’. It would have been easy enough for the Legislature to have expressly included the term if it had wished to do so.
There are significant differences between ‘6 issue ’ ’ and “ descendants ” which bear upon the validity and force of the reasons for the common-law presumption applicable to them respectively and the reversal of the presumption to the limited extent in respect of “issue” which this court believes was intended by the statute. As a class encompassing either the first degree or all degrees of offspring, in accordance with the user’s intention, the word “ issue ” is generally proper Avhether the parent of an offspring is living or not. The term is customarily used in connection with the laAvs of descent and inheritance. It may be either a word of limitation usually in wills, or a word of purchase in deeds (95 C. J. S., Wills, § 666; 48 C. J. S., Issue, pp. 776-783). In contrast, “ descendants ” is a word of fixed meaning, or at least less flexible. It is rarely restricted to mean first degree offspring, or descriptive of a child whose parent is living. “ Descendants ” has reference to genealogy, *728 or the succession of persons in the family relationship, and has no necessary connection with the laws of inheritance (95 C. J. S., Wills, § 660; 26A C. J. S., Descendant, pp. 503-505; Descent and Distribution, pp. 572-574). These fine distinctions lend force to the more precise comparison between the two terms made by a distinguished author and. his advice as to their proper use in wills: “ The word issue is technically, and when not restrained by the context or family circumstances, co-extensive and nearly synonymous [emphasis supplied] with the word descendants, comprehending those of every degree. It is, however, frequently employed in the restricted sense of children # * * Generally speaking, where practicable, the use of the word children or descendants is recommended in preference to the word issue as they have more definite meaning, and are consequently less liable to litigation” (Eemsen, Preparation of Wills and Trusts [2d ed.], p. 106).
The term “issue” in general has given the courts more frequent and greater difficulty than “descendants” and in respect of the common-law presumption is primarily responsible for their perplexity which was finally resolved in this State by section 47-a. Historically the term “ descendants ” did not present the same difficulties. The court in Petry v. Petry (186 App. Div. 738, affd. 227 N. Y. 621) whose scholarly analysis of the reasons for the common-law presumption and hopeful suggestion for its abandonment may have to a degree been responsible for the enactment of the statute, delves into the basis for the judicial disfavor of the common-law rule. In doing so, neither in its own opinion nor in the authorities relied upon, is any reference made to ‘ ‘ descendants ’ ’ as the cause of such disfavor.
The normal and legal meaning of the term “ descendants ” has generally encompassed the offspring in all degrees of a deceased common ancestor, without regard to any particular descendant having a living parent. Therefore, everyone who qualifies as a member of a class of ‘ ‘ descendants ’ ’ is regarded as an original object of the bequest and takes equally with the other members, unless a contrary intent is indicated. Page on Wills at section 1077 in discussing “ descendants ” clearly states: “ A gift to * * * descendants of testator’s brothers and sisters, is, prima facie, to be distributed per capita ”, which is the type of gift with which we are concerned in the case at bar.
The court concludes that in enacting section 47-a of the Decedent Estate Law, the Legislature was not called upon and *729 did not attempt to alter the prevailing common-law per capita presumption applied to the term “ descendants ” as to which in the court’s view there was little or no “ mischief ” to he remedied (see McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 301; American Historical Soc. v. Glenn, 248 N. Y. 445, 451). It follows, therefore, that distribution here must be made to Mildred Heeney and her two children as the descendants of William W. Gardiner, per capita, unless the testator without regard to technical considerations intended the contrary.
The court will not examine the will in an attempt to discover a faint glimpse, if any, of an intent an the part of the testator for stirpital distribution. Testator’s intent is to be determined from the language of the will as a whole in the light of the surrounding facts and circumstances. The particular provisions of the gift in question may be compared with similar provisions found in the will and interpreted in line with the general testamentary plan, if any, and in view of the relevant conditions as they existed when he drew the will and sometimes until the time of his death. To this end extrinsic evidence may be resorted to if the intent is not clear and is otherwise not ascertainable. These propositions are too well established to require citations. If necessary to establish the facts a hearing-should be held (Matter of Thompson, 217 N. Y. 111; Matter of Falvey, 7 A D 2d 476) but no such necessity appears herein.
In respect of a particular term or phrase used by the testator, his intent ‘ ‘ must be ascertained by a reference to the law which the testator had in mind, and with which he was familiar at the time of the execution” (Matter of Gallagher, 10 Misc 2d 422, 424-425; Matter of Krooss, 302 N. Y. 424; cf. Matter of Mann, 138 Misc. 42). This quotation is most apt when construing the will of a lawyer, and especially here where both testator and the draftsman of the will were experienced lawyers (Matter of Barrett, 141 Misc. 637; Matter of Dudley, 168 Misc. 695; Matter of Levinson, 5 Misc 2d 979). When testator executed his will and codicils there was no authority which held that section 47-a of the Decedent Estate Law covered the use of the term “ descendants ”. The section had changed the common-law presumption only as to “issue ”. It is very significant that testator avoided the use of that term throughout the will. It is as if he heeded the admonition to avoid its use when practicable as a source of litigation, implied in the contemporaneous recommendation by Professor Bern sen in his treatise on wills and trusts quoted above. The same thought was expressed in the comment by a committee of the Bar Association recommend *730 ing passage of section 47-a which, considering its source, may be deemed as having been carefully worded: “ The committee believes that some general provision of this sort is advisable, and that it would prevent and settle considerable litigation over the meaning of the word ‘ issue ’ in actions and proceedings where wills are to be construed ” (Bulletin No. 2 [No. 73, p. 129] of Committee on Amendment of the Law, Association of Bar of City of New York, 1921). No concern was expressed as to litigation over the meaning of the word ‘ ‘ descendants ’ ’; evidently its common-law connotation of per capita distribution was deemed well left undisturbed. Testator as a lawyer, or the scrivener in his law firm, may reasonably have reached the same conclusion, using the word ‘ ‘ descendants ’ ’ with that in mind and avoiding the word “ issue ” to which section 47-a of the Decedent Estate Law gave a presumed stirpital meaning. Not until much after his death was a difference of opinion reported as to whether the section gives a similar meaning to “ descendants ”.
Testator throughout the will used other terms and phrases when he intended to indicate a mode of distribution other than to descendants per capita. Thus in article 1 ‘ Fourth ’ ’, by which he created a $20,000 trust for his brother Thomas for life and remainder to his nephew, he designated the secondary remaindermen as “ such person and in such proportions and amounts as if my said nephew had then died intestate and the owner thereof under the laws of the State of New York then in force governing the distribution of personal property of intestates.” He employed the very same designation for the secondary remaindermen of two trusts each in the sum of $120,000 or l/10th of his net estate, whichever is lesser, which he created by articles “ Fifth ” and “ Seventh ” for the benefit of his stepson and nephew respectively.
In article ‘ ‘ Eighth ’ ’, a residuary trust was created for the life benefit of testator’s wife. The remainder is directed to be divided in accordance with provisions contained in three subdivisions; and here in subdivision (1) it is noted that when testator intended to give a secondary remainder to the children of the primary remainderman living at the time of the latter’s death (which is the interpretation sought in behalf of Mildred Heeney under subdivision [2] of this article) he said exactly that. In subdivision (1) he gave 2/20ths of what would be left of the principal of the residuary trust upon the death of his wife to his stepson Sylvester “or if he then be dead to his children then living, or if neither he nor any child of his then *731 be living, then in equal parts to and among ’ ’ three named charitable institutions. In contrast and immediately thereafter, in subdivision (2) which is the provision under consideration, testator gave 9/20ths to his brother William “ or if he then be dead to Ms descendants then living, or if neither he nor any descendant of his then be living * * * then in equal parts to and among” five named charitable institutions. It seems clear that in subdivision (1) testator intended to limit the secondary beneficiaries to his stepson’s immediate children and that in subdivision (2) he intended by the word “ descendants ” to include within that class not only his brother’s child, Mildred Heeney, but also her children although then not yet born; otherwise, he would have repeated the same description “ children ” in subdivision (2) or perhaps the singular since his brother had only one child. The same distinction applies to subdivision (3) of article “ Eighth ” by which testator gave the remaining 9/20ths of the principal of the residuary trust to his nephew in the same manner as to his brother by subdivision (2). Here testator further differentiated the class of secondary remainder-men, being the 1 ‘ descendants then living ’ ’ of the nephew, from the class of remaindermen of the trust for the nephew created by article “ Seventh ” in which the class comprised those persons who would take his property as in intestacy.
These clear distinctions carried out throughout the will point to an expression of intent to which full effect must be given (Matter of Corlies, 150 Misc. 596, affd. 242 App. Div. 703; Matter of Wylde, 129 N. Y. S. 2d 712). One cannot but feel that testator’s obvious avoidance of the term “issue” and discerning use of other terms, such as “child”, “children”, “ descendants ” and those who take by intestacy, was deliberate and with the intention of differentiating as to the classes of beneficiaries under the different provisions of the will and of not imposing a uniform form of distribution (Matter of Voight, 178 App. Div. 752, affd. 178 App. Div. 751; cf. Matter of Rothschild, 11 Misc 2d 817). What testator meant when he used these terms, in the light of his refraining from using the most common term ‘ ‘ issue ’ ’, is not to be decided in vacuo (Matter of Upjohn, 304 N. Y. 366, 375). As heretofore stated and at the expense of repetition, when testator drew his will the statute had altered the presumption as to “issue” and a distinguished author had advised to avoid the use of that term if possible. It is reasonable to assume, therefore, that testator desired to avoid the statutory preference for stirpital distribution by using the word “descendants” instead of *732 “ issue ” in the belief, thought to be correct by this court, that the former word retained the common-law connotation of per capita.
The differences in the amounts of the gifts and in the classes of secondary remaindermen under the various provisions of the will does not persuade the court, as contended in behalf of Mildred Heeney, that testator intended to provide equally for two fraternal blood lines, one his brother William and the latter’s daughter Mildred, the other his predeceased brother and the latter’s son Franklin. It does not appear here that “ equality among those of equal degree in relationship is the keynote of the entire instrument ” and, therefore, should call for stirpital distribution as to each class of secondary remaindermen (cf. Central Hanover Bank & Trust Co. v. Pell, 268 N. Y. 354, 359; Matter of Crane, 113 N. Y. S. 2d 865). Nor is there sufficient support for the contention that the will establishes a per stirpital pattern that should be applied under subdivision (2) of article “Eighth”. First, as a requisite for such application there must be identity of terms in the provisions for distribution in related instances (Matter of Good, 304 N. Y. 110; Matter of Farmers’ Loan & Trust Co., 213 N. Y. 168; Matter of Burke, 178 Misc. 684; Matter of Jones, 123 N. Y. S. 2d 367; Matter of Rothschild, supra; Matter of Sherman, 67 N. Y. S. 2d 261, affd. 267 App. Div. 765) and an express or implied direction for equal treatment of stock (Brown v. Rosenstrauch, 155 N. Y. S. 2d 201; Matter of Dick, 9 Misc 2d 890) which the testamentary language here negate. Second, whereas a per stirpital pattern appears in other provisions of the will, in the entire article ‘ ‘ Eighth ’ ’ dealing with the residuary trust the contrary pattern appears. Consistency and harmony is not necessarily intended when the provisions being compared are as here not in “ pari materia ” and do not relate to the distribution of the same remainders to the same classes on the termination or failure of the same intermediate estates (cf. Central Hanover Bank & Trust Co. v. Pell, supra). In the one respect which presents the principal issue in this proceeding testator did indicate a single pattern. There is a similarity in the distribution of the residuary trust remainder under the three subdivisions of article “Eighth”. In the first by the words “ then living ” he provided for a per capita distribution to his stepson’s children who constituted that class at time of distribution without regard to the issue of any predeceased child. In the second and third subdivisions by the same words “then living” he provided for distribution to his brother’s *733 descendants and his nephew’s descendants respectively, also per capita, and here without regard to a parent of any descendant being alive. (2 Davids, New York Law of Wills, § 998; 20 A. L. R 2d 830, 839.)
In view of all of the foregoing, the court, far from finding in the will any glimpse of an intent to provide for distribution per stirpes of the remainder share under subdivision (2) of article ‘ ‘ Eighth ’ ’, holds that testator intended distribution thereof per capita, thus entitling the wards of the special guardian to share equally with their mother in the principal of the remainder share and in the income accruing after the death of the life tenant. All prior income is payable to the personal representatives of the life tenant. The will is construed accordingly. The fixation of attorneys’ fees for services rendered to petitioner will await further proceedings. The relief requested in respect of the sale or abandonment of certain stock described in the petition is granted.
Proceed accordingly.