**MERCANTILE TRUST COMPANY NATIONAL ASSOCIATION, Trustee under the Last Will and Testament of Samuel E. Hoffman, deceased, Plaintiff,**

v.

**Ruth BROWN, Mary Louise Love, Nathalie Richard Arribas-Munoz, Defendants-Appellants,**

**John Allan Love, III, Jeffery Scott Love, a minor, Defendants-Respondents.**

**No. 55102.**

Supreme Court of Missouri, Division No. 2.

April 12, 1971.

Motion for Rehearing or to Transfer to Court En Banc Denied June 14, 1971.

Thompson, Walther & Shewmaker, Edmonstone F. Thompson, Paul M. Fletcher, St. Louis, for appellants.

Gillette F. Wright, St. Louis, for respondent, John Allan Love, III, and Guardian Ad Litem for respondent Jeffery Scott Love.

FINCH, Judge.

Plaintiff, trustee under the will of Samuel E. Hoffman, deceased, brought this declaratory judgment action seeking instructions as to the proper allocation of undistributed assets in the residuary trust created by that will. Clause Thirteenth, which created the trust, provided that the income therefrom should be paid to Ruth Scott, a niece, for life, and then to her daughter, Louise Scott Simpkins, for life, after which the trust terminated and was to be distributed "to the descendants of my aforesaid grand-niece, if there be such descendants." Ruth Scott died in 1950 and Mrs. Simpkins in 1968. The latter was survived by a daughter, Ruth Brown, another daughter, Mary Louise Love (who had a son, John Allan Love, III, and a grandson, Jeffery Scott Love), and a granddaughter, Nathalie Richard Arribas-Munoz, the daughter of Mrs. Richard, a predeceased child. The trial court held that all five of these persons were descendants of Louise Scott Simpkins, as that word was used in the will, and that the trust assets were to be distributed to them per capita, each receiving a one-fifth share thereof. Ruth Brown, Mary Louise Love and Nathalie Richard Arribas-Munoz have appealed, contending that testator intended a per stirpes distribution (which would exclude any share to the son and grandson of Mary Louise Love) and that one-third of the trust estate should be distributed to each of them. We have jurisdiction because the two-fifths of the trust which is in dispute amounts to approximately $270,000. We reverse and remand with directions.

This appeal comes to us on an agreed statement, pursuant to Supreme Court Rule 82.13, V.A.M.R., and presents the single issue of testator's intent when he provided for distribution of the residuary trust to the descendants of Louise Scott Simpkins.

Testator's will was executed December 12, 1913, and admitted to probate following testator's death in 1920. Pertinent provisions of the will (verbatim or summarized) were as follows:

FIRST: (Bequest of specific properties to niece, Ruth Scott.)

SECOND: I give and bequeath to said Walter S. Scott, if he survive me, or to his heirs at law if he does not survive me, the sum of Ten Thousand Dollars ($10,000).

THIRD: (Bequest of specific propties to nephew, George E. Hoffman.)

FOURTH: I give and bequeath to my grand-niece, Ellen Hoffman, daughter of my nephew, George E. Hoffman, if she survive me, the sum of Fifteen Thousand Dollars ($15,000). Otherwise said legacy shall lapse.

FIFTH: (Specific cash bequests to children of his brother and sister (except Ruth Scott) living at testator's death.)

SIXTH: (Specific cash bequests to named nieces and nephew.)

* * * * * *

EIGHTH: I give and bequeath to my sister, Sarah L. McCracken, wife of Aaron H. McCracken, if she survive me, or to her heirs at law if she does not survive me, the sum of Twelve Thousand Dollars ($12,000).

NINTH: (Trust for benefit of Louise Scott Simpkins until she becomes twenty-six, when the trust terminates and is distributed to her.)

* * * * * *

THIRTEENTH: * * * all the rest and residue of my estate * * * I give, devise and bequeath * * * IN TRUST, to pay to my niece, Ruth Scott, wife of Walter S. Scott, for and during her natural life the net income arising therefrom. On the death of my said niece, and if her daughter, my grand-niece, Louise Scott Simpkins, survive, said trust shall not end, but shall continue thereafter for and during the natural life of my said grand-niece and during said trust for my grand-niece the trustee shall from time to time pay to her all of the net income of the trust estate. On the death of my grand-niece, if she sur-

vive her mother, or on the death of her mother, if her mother survive her, said trust shall end. On the termination of said trust as aforesaid, the then income and principal of the trust estate shall by the trustee be transferred * * * to the descendants of my aforesaid grand-niece, if there be such descendants; but if there then be no descendants of my grand-niece, then (certain specific bequests); and the residue of said trust estate shall go one-half (½) to my sister, Sarah L. McCracken, above named, or her heirs at law, and one-half (½) to my nephew, George E. Hoffman, or his heirs at law.

The trial court found that the will was made by testator with the help of competent legal counsel familiar with the language of testamentary trusts and concluded that at the time of the execution of the will, and also at the time of testator's death, "it was very generally held, except in Massachusetts, that under a gift to 'descendants,' where the word was used without any terms in the context to qualify its meaning, the children of the ancestor and the issue of such children, although the parent was living, as well as the issue of deceased children, took in equal shares per capita, and not per stirpes." The court held, based upon such view of the law, and upon its analysis of the language of the will, that testator used the term "descendants" to include as many successive generations as possible and that all five of the defendants were within the term "descendants" as used in the will and should share equally in the corpus of the trust. Appellants dispute these legal conclusions of the trial court.

█ It is apparent, as the trial court's findings of fact indicate, that this will was drafted by one familiar with the language of wills and trusts. That being true, we must assume that counsel used words intended to express the desires of testator and that if a word or phrase had an established, well recognized meaning at the time

the will was written, that is the meaning to be ascribed thereto (Papin v. Papin, Mo., 445 S.W.2d 350; First National Bank of Kansas City v. Sullivan, Mo., 394 S.W.2d 273), absent language in the will expressing a contrary intention. Accordingly, we proceed to determine whether there was at that time an established, generally accepted meaning of the term "descendants," as respondents contend and as the trial court found.

The rule in England was that a gift to issue or descendants was presumed to be per capita.[1] Apparently, a number of the early American cases which considered this question adopted the English rule. In an annotation in 2 A.L.R. 930, 963 (published in 1919) it is stated that, "It is very generally held, except in Massachusetts, that under a gift to 'issue,' where the word is used without any terms in the context to qualify its meaning, the children of the ancestor and the issue of such children, although the parent is living, as well as the issue of deceased children, take in equal shares per capita, and not per stirpes, as primary objects of the disposition." Using almost this precise language, but substituting "descendants" for "issue,"[2] the trial court concluded that at the time of the execution of this will, and at the time of testator's death, it was well established that a bequest to descendants went per capita to all living descendants, even though in some instances the children of a living descendant would take per capita in competition with their parent.

Our investigation convinces us that at the time this will was written the term "issue" (or "descendants") was not universally construed in this country to mean all living lineal descendants including children and grandchildren of living descendants, as the statement at 2 A.L.R. 963 would indicate. Clearly, Maryland, New Jersey, New York, Pennsylvania and Tennessee had adopted the English rule.[3] In contrast, the rule in Massachusetts, as the A.L.R. annotation indicated, was that a remainder given to the issue of a life tenant imported representation and the life tenant's issue were presumed to take per stirpes.[4] However, there were other states not following the English interpretation at that time.

In Rembert v. Vetoe, 89 S.C. 198, 71 S.E. 959, the will, after creating certain life estates, left the property at the death of testator's daughter "to such of her issue as she may leave living at the time of her death, to be equally divided among such issue, but if my said daughter should die leaving no issue alive at the time of her death, it is my will that said two-thirds be equally divided among my next of kin at that time living according to the statute of distribution of intestate's estates." The court held that the word "issue" was generally equivalent to "heirs of the body" and that the court would look to their statute of distribution "to find out who are heirs of the body, descendants, or relations entitled to take * * *." 71 S.E. l. c. 965. The court then went on to conclude that "only those grandchildren and great-grandchildren of Martha Amanda Robertson whose parents were not in esse at the time that Martha Amanda Robertson died

1. 3 Powell on Real Property, § 370, p. 213; Simes and Smith, The Law of Future Interests, § 744, p. 226; In re Gardiner's Will, 20 Misc.2d 722, 191 N.Y.S.2d 520.

2. Most cases and texts treat the two terms as practically synonymous. For example, in 4 Page on Wills, Bowe-Parker Revision, § 34.23, p. 451, it is stated: "A descendant is 'one who descends, as offspring; correlative to ancestor or ascendant.' The term includes the most remote lineal offspring,

and is practically synonymous with 'issue' in its primary meaning."

3. Levering v. Orrick, 97 Md. 139, 54 A. 620; Security Trust Co. v. Lovett, 78 N.J.Eq. 445, 79 A. 616; Soper v. Brown, 136 N.Y. 244, 32 N.E. 768; In re Bauerdorf, 77 Misc. 656, 138 N.Y.S. 673; Gest v. Way, Pa., 2 Wharton 444; Ridley v. McPherson, 100 Tenn. 402, 43 S.W. 772.

4. Jackson v. Jackson, 153 Mass. 374, 26 N.E. 1112.

are to be construed as issue in contemplation of law; and those alone who would have taken under the statute are embraced within the term 'issue.' "

In Pearce v. Rickard, 18 R.I. 142, 26 A. 38, the court had adopted the English rule and construed a gift to the lawful issue of the life tenant to be a gift per capita. However, three years later the legislature reversed the situation in Rhode Island by providing in R.I.Gen.Laws, Chap. 203, § 11 (1896) that in wills made thereafter a gift of a remainder to issue of a life tenant should be construed to go to the life tenant's children living at his death and any lineal descendants of children predeceasing the life tenant.

Another case somewhat pertinent to the question at issue was Wood v. Robertson, 113 Ind. 323, 15 N.E. 457. There the remainder was to be divided among the testator's children then living "and the descendants of such as may be dead, share and share alike." The Supreme Court of Indiana held that testator intended a per stirpes distribution of his estate to his surviving children and "such descendants of the dead as the law made heirs." [5]

It also should be noted that prior to the execution of the Hoffman will in 1913, the states of Utah, Montana and California had provided by statute that testamentary gifts to issue or descendants were to be distributed according to the provisions in their respective statutory sections on succession. Comp. Laws of Utah, § 2785 (1907); Mont. Rev.Code, § 4780 (1907); Cal.Civ.Code, § 1334 (1909).

■ In view of the foregoing decisions and statutory provisions in various states, we do not believe that it is accurate to say that in 1913 it was well settled everywhere except in Massachusetts that a testator intended a per capita distribution among all living lineal descendants (regardless of whether their parents were alive) when he provided, without further qualification or explanation, for distribution to issue or descendants. Clearly, there was support for the English rule in a number of states, but some courts supported the contrary rule, and in some states the contrary meaning of the term had been established by legislative enactment. This being true, there was not a universally accepted meaning of the term that property left to descendants, without more, would be distributed per capita to all living lineal descendants.

This conclusion is substantiated, we believe, by an examination of other cases which were decided after 1913 but which considered instruments written before or during 1913. For example, in Clarke v. Clarke, 222 Md. 153, 159 A.2d 362, the court construed a will executed in 1913 which provided for distribution to issue of the life tenant. The court, rejecting the rule announced in Levering v. Orrick, supra, (which is characterized as dictum) held that the distribution should be per stirpes in order to prevent the issue of different generations from taking equally with the living parent. In Stamford Trust Co. v. Lockwood, 98 Conn. 337, 119 A. 218, the court held that a gift to the issue of a life tenant meant that they should take per stirpes because testator should not be presumed to have intended for children to share in a gift with their living parent since this would result in unequal distribution among the several branches of the life tenant's family. Kentucky reached a similar result in Smith v. Thom, 158 Ky. 655, 166 S.W. 182. In both of these cases the court was considering a will written before 1913. If, at the time those instruments were written (which would correspond to the time at which the Hoffman will was written), it had been generally established that a gift to descendants or issue, without more, meant per capita to all living lineal descendants, it would have been expected

---

5. Both sides cite the case of Union Safe Deposit & Trust Co. v. Dudley, 104 Me. 297, 72 A. 166, but we do not consider it as clear authority to indicate how the Maine court would have construed the term "descendants" as used in the Hoffman will.

that these courts would have construed the language in accordance with the English rule rather than as they did. The fact that the courts of these states, in passing on instruments executed before 1913, did not adopt the English rule in construing the language therein indicates that the term did not have the almost universal meaning contended for by respondents and found by the trial court.

Apparently, when this will was written in 1913, no Missouri court had adopted either the English rule or the Massachusetts rule in a case involving a gift to descendants or issue where there were no other words or terms to explain or qualify the term "descendants" or "issue." Counsel has not cited any such case and we have found none. Hence, we must conclude that there was no established precedent by decision in Missouri on which we could say that counsel relied in specifying that the residuary trust should pass to descendants of Mrs. Simpkins at her death. However, there were various statutory provisions relating to estates which used the term "descendants." This court has held in the case of First Trust Co. v. Myers, 351 Mo. 899, 174 S.W.2d 378, 382, when seeking to ascertain the intent of a testator, that, "In doubtful cases like this the courts seeking firm ground have said that the statutes of descents and distributions furnish 'a safe guide.' Such statutes announce public policy and are generally accepted as being fair and just. That 'safe guide' can and should be followed in this case because no positive provision of the will prevents it, but on the contrary the language used by the testator invites it.

"In Lyon v. Acker, 33 Conn. 222, 223, an extensively quoted case, it was said: 'The statute of distribution governs in all cases where there is no will; and where there is one, and the testator's intention is in doubt, the statute is a safe guide.'

"This language is approved in the great opinion written by Judge Cardozo in New York Life Insurance & Trust Co. v. Winthrop, 237 N.Y. 93, 142 N.E. 431, 433, 31 A.L.R. 791. In that case will be found the reasons (with a wealth of authority) for the adoption of this rule, as well as the effect of the words 'legal heirs' when used in a will. This case can be consulted profitably by those interested in similar situations. Judge Cardozo announced that the words 'legal heirs' or 'legal next of kin' take their 'color and connotation' from the schedule of the statute (of descents and distributions). He also said that: 'In the absence of clear tokens of a contrary intention, the statute is to be taken as the standard of division.' We think the rule thus announcing the statute as a 'safe guide' is of almost universal acceptance and should be adopted and followed. By so doing a distribution in this case should be made per stirpes."

We find by referring to RSMo 1909, Art. XV, relating to descents and distributions, that § 332 provided to whom real and personal estates should descend from one who died intestate. It provided first for inheritance by children or their descendants; in the absence of children or their descendants, the section provided successively the order in which others or their descendants would take. Then in § 336. (now § 474.020, V.A.M.S.) it was provided that when there were several lineal descendants of equal degree of consanguinity to the intestate (or other person), they should take per capita, but that when part were dead and part living, the issue should take per stirpes, i. e., the share of the deceased parent. As used in those statutes, the term "descendants" did not mean or imply that all living descendants, regardless of the degree of consanguinity, should take per capita, and did not mean or imply that a descendant would share equally with and compete with their own living parent or grandparent. Rather, in the factual situation in this case, it would indicate a per stirpes distribution. We conclude that in the absence of language or expression in the will indicating a contrary intention, testator's attorney should be considered to have looked to the statutory provisions in his use of the term "descendants" to describe a class of bene-

ficiaries, the same as he did in the use of the term "heirs at law."

Having so concluded, we next must consider whether, as the trial court found, the language and provisions of the will itself disclosed that testator in making bequests "did not trust any generation to pass his estate on to the next," that he desired by his will "to pass his estate as far down through successive generations as he could reach," and that "he used the broad term 'descendants' to include as many of the descendants as possible." We conclude that the provisions of the will do not indicate such intention.

The First, Second, Third, Fourth, Fifth, Sixth and Eighth clauses of the will all contained bequests to persons living at the time the will was executed. Some provided that the bequest would lapse if the devisee was not living at testator's death. Others said nothing in that respect and would be governed by § 474.460, V.A.M.S., the anti-lapse statute. Only in the Second and Eighth clauses did testator specify anything beyond the life of the named beneficiary, and in those he provided that if the named beneficiary was not living at testator's death, the bequest would go to the heirs at law of the beneficiary. Under such alternative bequest, the property would pass immediately to those who would inherit from the designated beneficiary under the law of intestate succession. Wooley v. Hays, 285 Mo. 566, 226 S.W. 842, 844. These provisions indicated a preference for the type of distribution contended for herein by appellants rather than the per capita distribution decreed by the trial court. None of these bequests indicated a desire to encumber the bequests in such a manner as to make them pass through as many generations as possible, nor did they indicate any fear or lack of confidence as to the conduct of the persons named in the various bequests.

In the Ninth clause a trust was established for Louise Scott Simpkins to continue until she became twenty-six, when it was to terminate and the assets were to be distributed. Again, this clause did not tie up assets through successive generations or indicate any intention that the term "descendants" in Clause Thirteenth should be construed as including all living lineal descendants, per capita.

That brings us to the provisions of the Thirteenth clause itself and the question of whether they indicate an intention to create a different type of distribution wherein the trust would be divided on a per capita basis between every living lineal descendant of Mrs. Simpkins, including descendants of living lineal descendants, as the trial court found. We conclude not. The alternative provisions wherein the corpus (subject to a few specific bequests) would go to Sarah L. McCracken, testator's sister, and George E. Hoffman, testator's nephew, or their heirs at law, indicated an intention that distribution should be in accordance with the statute of intestate succession, just as did some of the earlier provisions previously discussed. Under such disposition the more removed lineal heirs would share in the trust distribution only if their lineal ancestors were then deceased. The original or primary disposition of the trust corpus to descendants of Mrs. Simpkins, if living, did not indicate a contrary intention. Instead, the use of the term "descendants" simply expressed a desire to limit inheritance to direct descendants, thereby excluding collateral and ancestral heirs of Mrs. Simpkins. If there were no direct lineal descendants of Mrs. Simpkins and the property was to go to collateral heirs of anyone, testator wanted the property, in that event, to go to the collateral and ancestral heirs of Mrs. Sarah McCracken and George Hoffman rather than those of Mrs. Simpkins. We find no words which suggest an intention that there was to be a type of distribution different than among descendants as would occur under the intestate succession statute.

Respondents point to the successive life incomes to Mrs. Scott and Mrs. Simpkins as indicating a distrust that they would preserve and pass on the assets and they claim

that testator thereby indicated a desire to have as many generations as possible share per capita in the trust assets. We do not agree. So long as Mrs. Scott was alive, she received the entire income. She did not share it with her daughter or anyone else. The will provided that if Mrs. Simpkins survived Mrs. Scott, she then received the entire income for life, not sharing it with her daughters or anyone else. Such provisions were consistent with the idea that a child or grandchildren should not participate with his or her living parent and did not in any way indicate a desire that the corpus was to be divided equally between all living lineal descendants. The fact that testator did create these life incomes did not confer on the term "descendants" a meaning different than it would have had if the will had provided that the residue of the estate should go to Ruth Scott, if living; if not, to Mrs. Simpkins, if living; and if neither was alive, then to the descendants of Mrs. Simpkins, if there be such descendants. In such event the distribution would have been to descendants on a basis consistent with the distribution provided in the law of intestate succession.

We have decided this case, as previously indicated, on the basis of what we conclude to have been the meaning of the term "descendants" in Missouri at the time this will was written. We note, however, that the construction which we have adopted is in accord with most subsequent decisions on the subject and is in harmony with the present generally prevailing view.[6] It also is in accord with the definition of "issue" in the present Missouri Probate Code. See § 472.010(16), V.A.M.S.

Accordingly, we reverse and remand with directions to the trial court to enter judgment distributing the residuary trust assets, after payment of attorneys' fees and costs, one-third to Ruth Brown, one-third to Mary Louise Love, and one-third to Natalie Richard Arribas-Munoz.

All of the Judges concur.

---

6. 3 Restatement of the Law of Property 1655, § 303(1), Comments a, e; 3 Powell on Real Property 213, § 370; Wilmington Trust Co., v. Chapman, 20 Del.Ch. 67, 171 A. 222; Wyeth v. Crane, 342 Ill. 545, 174 N.E. 871; In re Thompson's Estate, 202 Minn. 648, 279 N.W. 574; In re Palmer's Estate, 38 Misc.2d 553, 237 N.Y.S.2d 524; In re Mayhew's Estate, 307 Pa. 84, 160 A. 724, 83 A.L.R. 149.