OPINION OF THE COURT
George J. Pulver, Jr., S.
Factual Background
The last will and testament of decedent Philip A. Goodwin (hereinafter referred to as decedent) was admitted to probate in the Greene County Surrogate’s Court on June 22, 1937. Pursuant to this document, which was executed on January 14, 1937, two trusts were established. The first trust named Mechanics & Farmers Bank Albany as trustee with the rents, income and profits of such trust being for the benefit and use of decedent’s wife, Eva M. Goodwin, during her lifetime. Upon Eva M. Goodwin’s death, the trust was to continue with the rents, income and profits being paid to decedent’s son John H. Goodwin (date of birth: Mar. 23, 1917) during his lifetime. Upon the death of decedent’s son John H. Goodwin, the trust was to cease with the fund assets being distributed to “the descendants of the said John H. Goodwin, share and share alike, if he have any and if he have none at that time, * * * to my daughter, Jean Elizabeth Goodwin, if she be living at that time, and if she be dead at that time * * * to her descendants, share and share alike, if she have any living at that time, and if she have none living at that time * * * to my [six named] cousins * * * absolutely, share and share alike” (decedent’s last will and testament f[ 9).
The second trust established by decedent’s will also designated Mechanics & Farmers Bank Albany as trustee and named decedent’s wife, Eva M. Goodwin, as lifetime beneficiary of the rents, income and profits of such trust. However, upon the death of Eva M. Goodwin, this trust was to continue *603 with decedent’s daughter, Jean Elizabeth Goodwin (date of birth: Feb. 29, 1920), as the successor lifetime beneficiary. Upon the death of decedent’s daughter Jean Elizabeth Goodwin, the trust was to cease and the fund assets be distributed to “the descendants of the said Jean Elizabeth Goodwin, share and share alike, if she have any and if she have none at that time, * * * to my son, John H. Goodwin, if he be living at that time, and if he be dead at that time * * * to his descendants, share and share alike, if he have any living at that time, and if he have none living at that time * * * to my [six named] cousins * * * absolutely, share and share alike” (decedent’s last will and testament 9).
On February 24, 1987, decedent’s wife, Eva M. Goodwin, died. Decedent’s son, John H. Goodwin, having predeceased Eva M. Goodwin and having left no descendants, the first trust was terminated and the assets ($256,832.05 plus interest) were distributed to Jean Elizabeth Goodwin (married name Albright) on March 16, 1988.
The second trust continued in its existence until the successor lifetime beneficiary, Jean Elizabeth Goodwin, died on January 21, 2001 survived by her four adult children: Philip Albright, Eugene Albright, Mary Jane Sotanski, and Elizabeth Ring;[1] six adult grandchildren: David Albright, Bonnie Pelenur, Marcia Wood Sotanski, Frances Sotanski, Sean Ring, and William Ring; and four minor great grandchildren: David Albright, Bryan Albright, Yael Pelenur, and Kayln Ring.
Petitioner Trasteo Bank, National Association, which is the successor trustee of the trust benefitting Jean Elizabeth Goodwin, filed a motion with this court seeking guidance and a determination as to what decedent intended when he directed, in his last will and testament, that the trust property be devised and bequeathed “to the descendants of Jean Elizabeth Goodwin share and share alike.” In essence, petitioner, which seeks to terminate the trust and distribute the corpus, is unsure whether the assets should be divided equally among the four children of Jean Elizabeth Goodwin or among all 14 aforementioned survivors. The corpus of the trust was at or about $844,810 as of January 2, 2002.
Finding that an ambiguity exists relative to the interpretation of the pertinent language, the court appointed John C. *604 Welsh, Esq.[2] as guardian ad litem on behalf of the four great grandchildren of Jean Elizabeth Goodwin and caused all 14 interested parties to be served with a citation for a construction hearing on January 3, 2002.
On the return date, the court heard oral argument from John C. Welsh, Esq. on behalf of the four great grandchildren of Jean Elizabeth Goodwin and Shannon L. Stockwell, Esq. on behalf of the four children of Jean Elizabeth Goodwin. Counsel for petitioner, Matthew Ryan, Esq., was also present but took no position of the petition instead demurring to the court. At the conclusion of oral argument, and after inquiring if the parties had anything further which they wanted the court to consider, the court reserved decision.
Issue Presented
The issue before this court is whether decedent’s devise of the trust corpus “to the descendants of the said Jean Elizabeth Goodwin, share and share alike if she have any” was a direction for there to be either a per stirpital or a per capita distribution.
Definition of Terms
Per Stirpes
To distribute property in a per stirpital fashion, the property is divided into as many equal shares as there are (i) surviving issue in the generation nearest to the deceased ancestor which contains one or more surviving issue, and (ii) deceased issue in the same generation who left surviving issue, if any (see, EPTL 1-2.14). Each surviving member in such nearest generation is allocated one share (see, id.). The share of a deceased issue in such nearest generation who left surviving issue shall be distributed in the same manner to such issue (see, id.). In this case, then, insofar as the four children of Jean Elizabeth Goodwin are the closest generation to decedent with surviving issue, and insofar as there are no deceased children on their level, the four surviving children would each receive one fourth of the trust corpus while the grandchildren and great grandchildren of Jean Elizabeth Goodwin would receive nothing.
*605 Per Capita
When property is distributed in a per capita fashion, each person takes, in his or her own right, an equal portion of the property (see, EPTL 1-2.11). In this case, then, insofar as at the time of Jean Elizabeth Goodwin’s death the class of descendants included 14 people, each person would receive one fourteenth of the trust corpus.
A Review of the Statutory Law
At common law, the presumption was that a devise to either “issue” or “descendants” meant for them to take per capita (see, Matter of Gardiner, 20 Misc 2d 722; see also, New York Life Ins. & Trust Co. v Winthrop, 237 NY 93; Schmidt v Jewett, 195 NY 486; Soper v Brown, 136 NY 244). This common-law presumption was abolished in 1921, however, with the enactment of Decedent Estate Law § 47-a (L 1921, ch 379, eff Apr. 30, 1921) which provided that, “If a person * * * shall devise or bequeath any present or future interest * * * to the ‘issue’ of himself or another, such issue shall, if in equal degree of consanguinity to their common ancestor take per capita, but if in unequal degree, per stirpes, unless a contrary intent is expressed in the will.” Notably, although the common-law presumption had applied equally to either “issue” or “descendants,” the statutory codification in Decedent Estate Law § 47-a only included the term “issue.”
Thereafter, Estates, Powers and Trusts Law § 2-1.2 (a), which became effective on September 1, 1967, provided that, for instruments executed prior to September 1, 1992, “[w]hen-ever a disposition of property is made to ‘issue’, such issue, if in equal degree of consanguinity to their common ancestor, take per capita, but if in unequal degrees, per stirpes, unless a contrary intention is expressed.” Again, the statute has no mention of the term “descendants” which, at common law, had the same meaning as “issue.”
The Position of the Four Children of Jean Elizabeth Goodwin
Counsel for the four children of Jean Elizabeth Goodwin urges this court to interpret the disputed language “to the descendants of Jean Elizabeth Goodwin share and share alike” as evidence of decedent’s intent for there to be a per stirpital distribution of the trust corpus. This would result in the trust corpus being distributed solely to the four children of Jean Elizabeth Goodwin, one fourth each, and to the exclusion of her grandchildren and great grandchildren. Several arguments are advanced in support of this position.
*606 A. Wishes of the Surviving, Interested Parties
As stated previously, there are 14 interested parties who survived Jean Elizabeth Goodwin and stand to receive money if the court determines that decedent intended for there to be a per capita distribution to all of his daughter’s descendants. The four children of Jean Elizabeth Goodwin have each filed sworn affidavits urging the court to interpret the ambiguous language to mean that the trust corpus should be distributed in a per stirpital fashion. This is not surprising, insofar as these four parties greatly benefit from this interpretation in that they would receive a significant amount more money than if the corpus is divided between 14 parties. What is somewhat surprising is that the six adult grandchildren of Jean Elizabeth Goodwin have also each filed an affidavit averring that, with full knowledge of the issues before the court, s/he requests a per stirpital distribution of the trust corpus to the four children of Jean Elizabeth Goodwin; each affiant also acknowledges that, pursuant to such an interpretation, s/he would not receive any of the trust corpus. Additionally, in their capacity as parents to the four minor great grandchildren of Jean Elizabeth Goodwin, each avers that it is his/her understanding, and desire, that a per stirpital distribution be ordered and that such an interpretation would preclude his/her offspring from receiving any money from the trust.
B. The Statutory Presumption of Per Stirpital Distribution to “Issue” is Not Rebutted
Arguing that a distribution to “descendants” should be treated exactly as a distribution to “issue,” the four children of Jean Elizabeth Goodwin argue that both the statute in effect at the time that decedent executed his last will and testament (Decedent Estate Law § 47~a) and the present controlling statute (EPTL 2-1.2 [a]) contain presumptions for per stirpital distribution in the absence of any contrary intent. According to the four children, decedent’s use of the phrase “share and share alike” is not a clear expression of an intent contrary to the aforementioned statutory presumption but, rather, is evidence of intent to require a per stirpital distribution with equal sharing among descendants in equal degree of consanguinity to their common ancestor (see, In re Estate of Kingsley, NYLJ, Jan. 6, 1992, at 23, col 3; Matter of Wilhelm, 60 AD2d 32; In re Russell’s Estate, 133 NYS2d 52). Therefore, according to the four children, the trust corpus should be distributed in a per stirpital fashion with each of them taking one quarter and no distributions being made below the generational line of the four surviving children.
*607 C. Case Law Relying on Common-Law Presumption is Erroneous
The four children also assert that the guardian ad litem inappropriately asks this court to rely on cases which were decided pursuant to the common-law presumption of per capita distribution (see, Matter of Phares, 38 Misc 2d 1; Matter of Gardiner, 20 Misc 2d 722) because the surrogates held the Decedent Estate Law’s statutory presumption of per stirpital distribution to be inapplicable insofar as the bequests in question were to “descendants” while the statute, although mentioning bequests to “issue,” did not explicitly contain the term “descendants.” It is the contention of the four children that, insofar as “descendants” and “issue” are synonymous, these cases were erroneous and should not be relied upon by this court.
D. Evidence of Decedent’s Intent to Overcome the Common-Law Presumption
Finally, the four children argue that, in the event that this court applies the common-law presumption of per capita distribution, a reading of decedent’s will, in its entirety, provides sufficient evidence of his intent to overcome such presumption and to provide for a per stirpital distribution. Specifically, they point out that the residuary clause of decedent’s will which established the two trusts, of equal amounts, for the benefit of his two children is evidence of per stirpital intent contrary to the common-law presumption of per capita distribution.
Additional evidence of per stirpital intent, they claim, is the will’s provision that should one of decedent’s children die that child’s money is to go to that child’s descendants and only if the child dies leaving no descendants is such child’s share to be distributed to the other surviving child.
E. Equity
Finally, the children assert that basic equity and fairness supports a per stirpital distribution because one of the children of Jean Elizabeth Goodwin has no offspring and would, therefore, receive one fourteenth of the trust, while another of the children has several children and grandchildren and therefore his immediate offspring would take six fourteenths of the trust corpus. Indeed, this is why the Legislature enacted Decedent Estate Law § 47-a (see, Matter of Union Trust Co., 170 App Div 176, 183 [“It certainly would not be equality to give seven shares to one granddaughter having six children and one share to a granddaughter having no children”]).
*608 The Position of the Guardian ad Litem on Behalf of the Four Great Grandchildren of Jean Elizabeth Goodwin
The guardian ad litem, John C. Welsh, Esq., advanced two theories to this court both of which support a per capita distribution of the trust corpus equally to all 14 living descendants of Jean Elizabeth Goodwin.
The guardian ad litem’s first argument is that the terms “descendants” and “issue” are neither synonymous nor interchangeable and that the Legislature’s failure to include the term “descendants” in Decedent Estate Law § 47-a and the subsequent EPTL 2-1.2 (a) should be interpreted to mean that a bequest to “descendants” does not fall within the statutory presumption of a per stirpital distribution between persons of unequal degrees (Matter of Phares, 38 Misc 2d 1; Matter of Gardiner, 20 Misc 2d 722). Under this theory, decedent’s use of the term “descendants” rather than “issue” would be evidence of his intent for his bequest to fall outside the scope of the per stirpital statutory presumption and for there to be a per capita distribution (i.e., share and share alike) to the class of descendants in any degree of Jean Elizabeth Goodwin in accordance with the common-law presumption.
Second, and alternatively, the guardian ad litem urges this court to interpret the terms “issue” and “descendants” to be synonymous and both encompassed by the per stirpital statutory presumption in existence at both the time decedent’s last will and testament was drafted (see, Decedent Estate Law § 47-a) and presently (see, EPTL 2-1.2 [a]). Therefore, decedent’s use of the term “descendants” would mean that the bequest was controlled by the presumption of per stirpital distribution (see, Matter of Schoellkopf, 21 Misc 2d 564). However, relying on hornbook law that a person may assure per capita distribution by specifically providing for “per capita distribution” or by including the words “share and share alike” or by stating that “all class members shall take in equal shares” (see, 3 Powell, Real Property § 30.18), the guardian ad litem asserts that decedent’s inclusion of the words “share and share alike” is sufficient evidence of his intent to rebut the per stirpital presumption and to require a per capita distribution among all class members.
Findings of Fact and Conclusions of Law
After reflection upon the arguments advanced by counsel, and review of the papers submitted, as well as review of the court file, the bill jackets for the 1967 enactment and 1992 revisions to EPTL 2-1.2 (a), and various treatises, law review *609 articles, and cases, renders the following findings of fact and conclusions of law:
First, it must be stated that a critical rule which must be followed in any construction hearing regarding a last will and testament is that the intent of the decedent is the determinative factor. Accordingly, the affidavits outlining the wishes of the 10 adult descendants of Jean Elizabeth Goodwin have no legal bearing on this court’s duty to ensure that decedent’s wishes, as expressed in his last will and testament, are carried out. Furthermore, the parents of the four great grandchildren of Jean Elizabeth Goodwin cannot legally waive the minors’ potential interests in the trust corpus. Indeed, the court notes that legal counsel for such minors argues on their behalf that the appropriate interpretation of decedent’s wishes would require a one-fourteenth per capita distribution of the trust assets to each of the minors. Therefore, while the selfless wishes of the grandchildren of Jean Elizabeth Goodwin are interesting and perhaps even to be commended, they have not been considered by this court in its determinations of facts and law.
Next, this court must determine if decedent intended for the term “descendants” to be synonymous with the legal term “issue” and thereby meant to be used interchangeably or whether decedent intended for the term “descendants” to mean something other than the legal term “issue,” thereby taking his bequests outside the scope of the controlling statutory presumption applicable to “issue.” The dictionary meaning of a “descendant” is “Those persons who are in the blood stream of the ancestor. Term means those descended from another, persons who proceed from a body of another such as a child or grandchild, to the remotest degree” (Black’s Law Dictionary 445 [6th ed]). Therefore, in this court’s opinion, the word “descendant,” as used by a careful lawyer, would encompass all persons biologically related to the ancestor which, in this case, would encompass the four children, six grandchildren, and four great grandchildren of Jean Elizabeth Goodwin.
EPTL 1-2.10 (a) (1) provides that “[u]nless a contrary intention is indicated * * * [tissue are the descendants in any degree from a common ancestor.” Therefore, by inverse necessity, descendants in any degree from a common ancestor are “issue.” Case law also supports the determination that the terms “descendants” and “issue” are legal synonyms (see, e.g., Van Beuren v Dash, 30 NY 393; Matter of Schoellkopf, 21 Misc 2d 564; In re Russell’s Estate, 133 NYS2d 52; Matter of Libby, 206 Misc 723; see also, 2 Davids, New York Law of Wills §§ 662, *610 674). This court finds that the terms “descendants” and “issue” are synonymous legal terms which can be used interchangeably and rejects the argument that decedent intended for the use of the term “descendants” to render his bequests outside the scope of the then-existing per stirpital statutory presumption (see, Decedent Estate Law § 47-a).
This court attaches no significance to the fact that, at common law, both “descendants” and “issue” were mentioned in the per capita presumption, but that the statutory codifications of per stirpital presumptions mention only “issue” (contra, Matter of Phares, 38 Misc 2d 1). As at least one court has previously ruled, “The legislative history of [Decedent Estate Law §] 47-a sheds no light on the question of coverage, no reference being found to the term ‘descendants’ ” (see, Matter of Gardiner, 20 Misc 2d 722, 725). This court has examined the Bill Jackets to the EPTL successor codifications to Decedent Estate Law § 47-a and found nothing to indicate that the codification was meant to apply only if the term “issue” was used but not when the term “descendants” was used. Indeed, the overriding tenor of the documents contained in the 1967 Bill Jacket was that there had been insufficient time for the surrogate’s experts to review the proposed EPTL substantive law codification and that the Governor should veto the bill in order to enable such review; there was no specific mention of any conscious decision to use the term “issue” to the exclusion of “descendants.” Furthermore, at least one memorandum in the 1992 Bill Jacket used the terms “issue” and “descendants” as synonyms, stating, “whenever a disposition of property is made to ‘issue’, such ‘descendants’ take ‘by representation’ ” (Mem of Assembly in Support, Bill Jacket, L 1992, ch 595).
This court further finds that, advised by legal counsel, decedent would also have been aware that the statutory presumption in effect in 1937 when he drafted the last will and testament provided for a per stirpital distribution when class members are in unequal degrees to the ancestor (see, Decedent Estate Law § 47-a). For the following reasons the court finds that decedent’s repeated use of the legally significant phrase “share and share alike” is evidence of decedent’s intent to rebut the existing statutory presumption of per stirpital distribution and to ensure that all members of the class (that is, descendants in any degree to Jean Elizabeth Goodwin) share equally (i.e., per capita) (see, Matter of Miller, 6 Misc 2d 711).
Furthermore, another canon that must be adhered to in a construction proceeding is that the decedent’s intent must be *611 determined after reviewing the last will and testament in its entirety (see, e.g., Matter of Carmer, 71 NY2d 781). In this case, decedent’s last will and testament contained two specific bequests of monetary sums to civic organizations/charities; these bequests directed that the sums were to be “forever invested and reinvested” with net income being used from time to time for general operation expenses (decedent’s last will and testament 3, 4). Decedent also provided for various specific bequests of monetary sums, personalty or realty each of which was bequeathed to one named person “absolutely” (decedent’s last will and testament fifí 2, 4, 5, 6, 7, 8). These specific bequests did not contain instructions as to what to do if the legatee was deceased at the time of the distribution and the court does not find anything in these provisions of the last will and testament that help ascertain decedent’s intent with regard to the provisions in question in this case.
The last will and testament also contained the bequests creating the two trusts (see discussion, supra) in each of which decedent repeatedly used the phrase “share and share alike” (decedent’s last will and testament 9). First, decedent directed that, upon the dissolution of each trust the corpus should be distributed, share and share alike, to the living descendants of the successive lifetime beneficiary. Then, in the event that there were no living descendants of the successive lifetime beneficiary, decedent directed that the corpus was bequeathed to decedent’s remaining child and, if that child were deceased, to the descendants of that child who were living at that time, share and share alike. Finally, in the event that there were no living descendants of the decedent’s remaining child, he bequeathed the corpus to six of his cousins, absolutely, share and share alike.
Examination of the last will and testament reveals that decedent utilized the phrase “share and share alike” seven times throughout the five-page document. This repeated use of a phrase of such legal significance (see, e.g., Matter of Gould, 33 Misc 2d 924; Matter of De Leo, 34 Misc 2d 233) is persuasive evidence to this court that decedent’s counsel, the attorney draftsman, would have carefully explained the legal significance thereof as well as discussed the effect and outcome the insertion of such words would have on the distributive plan. Therefore, upon reading decedent’s last will and testament in its entirety this court is of the opinion that decedent’s choice of the phrase “share and share alike” was evidence of his intent to rebut the then-existing statutory presumption of per stirpital *612 distribution to class members of unequal degrees to the ancestor.
In making the above determinations, this court has considered the rule of construction that, whenever possible, meaning should be ascribed to all words included in a last will and testament (see, Matter of Martin, 255 NY 248). This court has also considered the “pride of authorship” of attorney practitioners in the 1930’s and their scrupulously chosen words to be included in last wills and testaments. Furthermore, it is generally known within the community in which this court sits that, as to the writing of wills, Leonard A. Warren, Esq. was a meticulous and careful scrivener. For all of these reasons, this court is not persuaded that decedent would have repeatedly included the legally significant phrase “share and share alike” in his last will and testament if he did not intend for there to be a per capita distribution among the class members.
In sum, the guardian ad litem said it best when, at the closing argument, he succinctly stated, “All we do know is that Mr. Warren was a distinguished practitioner in Coxsackie, who was highly regarded and practiced there for a good many years; * * * and he was skilled and experienced and we presume that when he said ‘descendants’ he meant ‘descendants’ and when he said ‘share and share alike’ he meant ‘share and share alike’ ” (Jan. 3, 2002 transcript of oral argument, at 12). This court is persuaded that such is the case.
Accordingly, it is hereby ordered, adjudged and decreed that the construction and effect of the disposition of property contained in the third paragraph of the ninth article of the last will and testament of decedent Philip A. Goodwin is that it was the intention of the decedent, when he devised the trust corpus “to the descendants of Jean Elizabeth Goodwin share and share alike” that the trust corpus was to be divided equally among all class members, with the class members being the living descendants, in any degree, of Jean Elizabeth Goodwin.
Accordingly, it is hereby ordered, adjudged and decreed that petitioner shall dispose of the trust corpus in accordance with this court’s determination; to wit: a one-fourteenth allocation of the trust corpus to each of the following: Philip Albright, Eugene Albright, Mary Jane Sotanski, Elizabeth Ring, David Albright, Bonnie Pelenur, Marcia Wood Sotanski, Frances Sotanski, Sean Ring, William Ring, and the four minors David Albright, Bryan Albright, Yael Pelenur, and Kayln Ring; and it is further ordered, adjudged and decreed that one fourteenth of the corpus shall be paid by petitioner to David E. Albright, *613 father of minor David A. Albright, residing at 9 Orchard Drive, Queensbury, New York, for the use and benefit of such infant until the child’s majority or unless otherwise ordered by the court; and it is further ordered, adjudged and decreed that one fourteenth of the corpus shall be paid by petitioner to David E. Albright, father of minor Bryan Albright, residing at 9 Orchard Drive, Queensbury, New York, for the use and benefit of such infant until the child’s majority or unless otherwise ordered by the court; and it is further ordered, adjudged and decreed that one fourteenth of the corpus shall be paid by petitioner to Bonnie Pelenur, mother of minor Yael Pelenur, residing at 1 Mooring Road, Marblehead, Massachusetts, for the use and benefit of such infant until the child’s majority or unless otherwise ordered by the court; and it is further ordered, adjudged and decreed that one fourteenth of the corpus shall be paid by petitioner to William D. Ring, father of minor Kayln Ring, residing at 47 River Road, Hyde Park, New York, for the use and benefit of such infant until the child’s majority or unless otherwise ordered by the court; and it is further ordered, adjudged and decreed that petitioner proceed pursuant to article 22 of the Surrogate’s Court Procedure Act seeking a decree settling account and discharging fiduciary.

. Jean Elizabeth Goodwin was not predeceased by any of her children.

. John C. Welsh has been a professor at Albany Law School since 1959. On numerous occasions during his tenure, he has also served as Acting Dean of the Law School. Upon later detailed review of the entire court file of decedent’s estate, it was discovered that, coincidentally, John C. Welsh’s father, also named John C. Welsh, was appointed special guardian in 1937 for the then minors John H. Goodwin and Jean Elizabeth Goodwin to protect their interests during the probate of decedent’s last will and testament.